DECISION AND JUDGMENT ENTRY
{¶ 1} Mark Letsche appeals the denial of his Motion to Suppress Evidence by the Chillicothe Municipal Court. Appellant argues that the court should have suppressed all evidence obtained as a result of his warrantless arrest in violation of the Fourth Amendment. He contends that the trial court erred in finding that (1) the "hot pursuit" doctrine justified the police officers' warrantless entry into his home; and (2) the officers had probable cause to believe that Appellant was not authorized to be inside the residence where he was arrested. Because the "hot pursuit" doctrine requires that the arrest of a suspect commence in a public place and the officers here did not attempt to arrest Appellant until they discovered him inside his residence, we hold that the doctrine is inapplicable. Turning to the "emergency exception" to theFourth Amendment, we conclude that in order to justify a warrantless entry into a home, the State need only establish that the officers had an objectively reasonable belief that immediate entry into the residence was necessary to protect life or property. Thus, the court's use of the probable cause standard was incorrect. Nonetheless, we conclude that the officers did not have an objectively reasonable belief that entry was necessary under the totality of the circumstances. Because the police officers' warrantless entry violated Appellant's Fourth Amendment rights, the court should have granted the Motion to Suppress Evidence.
 {¶ 2} Early one morning at approximately 1:43 a.m., Janie Hedrick heard a loud noise in front of her house. She looked out the front window and observed a man (later identified as Appellant) exiting a van. Although she did not testify to this, apparently the noise Ms. Hedrick heard was the van striking a vehicle parked on the street. The man, who was wearing only shorts and carrying his shoes, shirt, and socks, walked quickly down the street. Ms. Hedrick went outside and yelled at the man but he continued walking. Ms. Hedrick then contacted the police and provided them with a description of the individual and the direction in which he was walking.
 {¶ 3} Ultimately, the police arrested Appellant inside his home and charged him with various traffic offenses, including leaving the scene of an accident. While the record contains no evidence that Appellant actually resided in the house where he was arrested, the State does not argue that Appellant lacked standing to challenge the warrantless entry. Therefore, we assume that the State concedes that the officers arrested Appellant in his own home.
 {¶ 4} Appellant pled not guilty to all charges and filed a Motion to Suppress Evidence obtained in violation of his constitutional rights, including the results of the breath test taken to determine his blood alcohol level, statements made by Appellant, and tests of Appellant's coordination and/or sobriety. In support of his motion, Appellant alleged that the police violated his constitutional rights by making a warrantless entry into his home and, therefore, all evidence obtained as a result of this entry must be suppressed.
 {¶ 5} At the hearing on this motion, the State called three witnesses. Officer Philip Buchanan testified that he is a police officer with the City of Chillicothe. On September 4, 2002, he was dispatched to the area of 695 Adams Avenue in reference to a hit skip accident. When Officer Buchanan arrived at the location, Sgt. Cunningham provided him with a description of a subject who had walked away from the scene and Officer Buchanan began searching for the individual.
 {¶ 6} As Officer Buchanan was driving eastbound on Adams Avenue, he heard a door slam at 835 Adams Avenue but saw no lights on in the house. Officer Buchanan exited his vehicle and approached the residence. He shined his flashlight through the front window and observed Appellant talking on the telephone. Officer Buchanan noted that Appellant matched the suspect's description so he began pounding on the door. After receiving no acknowledgment from Appellant, Officer Buchanan shined the flashlight through the window into Appellant's eyes to try and get his attention. Appellant continued speaking on the phone, ignoring Officer Buchanan. Appellant made no effort to hide or abscond.
 {¶ 7} Officer Buchanan then radioed Sgt. Cunningham and informed him that he had located an individual inside a residence who matched the suspect's description and was not answering the door. Sgt. Cunningham traveled to the residence and he and Officer Heinze banged on a couple of windows on the east side of the house. Thereafter, Officer Buchanan did not observe Sgt. Cunningham or Officer Heinze until they had entered the residence. Officer Buchanan then entered the residence as well.
 {¶ 8} Once inside the residence, the officers asked Appellant if he lived there and if he could prove that he was inside his own residence. Officer Buchanan testified that Appellant was unable to produce any proof of residence and kept stating that the officers had no right to be in his house and had to leave. Sgt. Cunningham informed Appellant that he needed to produce a house key or a piece of mail indicating that he resided in the home. Appellant stated that he had a house key but that it was in his car that he had wrecked up the street. The officers then arrested Appellant.
 {¶ 9} On cross-examination, Officer Buchanan testified that 695 Adams Avenue, where the collision occurred, and 835 Adams Avenue are a city block or less away from one another. Officer Buchanan also testified that prior to his knocking on the door of the residence, the dispatcher had informed the responding officers that Angela Letsche was the owner of the vehicle the suspect had crashed and that her address was on Crouse Chapel Road. The dispatcher also told the officers that approximately two to three months before this incident, Appellant had called the Chillicothe Police Department to report a theft from the minivan and the police were sent to 835 Adams Avenue to take that report.
 {¶ 10} Sgt. Thomas Cunningham testified that he was on patrol on September 4, 2002 at 1:43 a.m. and responded to the area of 695 Adams Avenue. Upon his arrival, Sgt. Cunningham found a red minivan that had driven off the road and hit a parked car, shoving the car through a fence and into a front yard. The driver of the minivan was not in the area and Sgt. Cunningham spoke to some nearby residents.
 {¶ 11} Sgt. Cunningham provided other officers with a description of the subject provided by the witnesses and they started searching for the suspect. The officers ran the minivan's registration and then attempted to find an address in the vicinity where the registered owner might be living or another type of contact. The officers learned that there had been a past contact at 835 Adams Avenue in relation to the minivan.
 {¶ 12} Officer Buchanan informed Sgt. Cunningham that he had heard a door slam in that general area. Officer Buchanan then proceeded to that location and attempted to make contact with someone at 835 Adams Avenue. He stated that there was a subject inside who matched the suspect's description so Sgt. Cunningham and Officer Heinze traveled to the residence. Through the window, Sgt. Cunningham observed Appellant sitting inside the house and talking on the telephone. Officer Buchanan was knocking on the front door and Officer Heinze was knocking on the back door. Sgt. Cunningham knocked on the window to try to get Appellant's attention. Because Appellant was obviously ignoring the officers, Sgt. Cunningham became concerned that Appellant did not belong in the residence.
 {¶ 13} Officer Heinze advised Sgt. Cunningham that the back door was insecure so the officers entered the residence to determine if Appellant belonged in the house. Sgt. Cunningham asked Appellant who he was and whether he lived in the house. Appellant refused to say who he was and would only say that he lived in the house. Sgt. Cunningham asked for proof that Appellant resided there and said they would leave if he produced the proof. Appellant stated that there was nothing in the house that he could show the police and that his house key was on his key ring which was in his wrecked car up the street. At that point, the officers took Appellant into custody for the "hit skip."
 {¶ 14} On cross-examination, Sgt. Cunningham testified that he made the decision to charge Appellant with OMVI at the time of his arrest. When the police made contact with Appellant, he had a strong odor of alcohol about his person and was very belligerent. Appellant's eyes were also bloodshot and glassy, his speech was slurred, and he was swaying back and forth, having trouble maintaining his balance. Sgt. Cunningham further testified that the lights were on inside the house so he could see Appellant sitting inside before the officers entered.
 {¶ 15} Lastly, Ms. Hedrick testified as to the events she witnessed in the early morning hours of September 4, 2002. Ms. Hedrick also testified that she identified Appellant for the police following his arrest.
 {¶ 16} After making oral factual findings, the trial court denied Appellant's Motion to Suppress Evidence, stating: "* * The Court upon all that evidence does determine that in a very recent case Middletown v.Flinchum * * *, decided in April of this year that when officers having identified themselves and are in hot pursuit of a suspect who flees into a house in order to avoid arrest, the police may enter without a warrant regardless of whether the offense for which the defendant is being arrested is a misdemeanor. The Court finds that those three elements have certainly been met in this case and would justify the entry. The officers spent considerable time trying to get into the house. Officer Buchanan was in the area in pursuit at the time, looking around the area, heard the door slam and that the suspect was obviously in the house to avoid arrest having left the area from the hit skip. The Court finds that that would be one basis. The Court further finds that even if that were not the case, the unsecured home from the back door, and the defendant ignoring the flashlight shining on his face and all the knocking would give them probable cause to believe that a crime was being committed, that someone was in a home where they should not have a right to be at that hour. The Court finds two bases for their entry. Following their entry, the Court finds that with the leaving of the scene of an accident at that hour and the additional indicia of impairment being a strong odor of alcohol, belligerent attitude, bloodshot, glassy eyes, swaying when standing and general appearance of intoxication would warrant an arrest for that offense as well as the leaving the scene. * * *" Appellant then entered no contest pleas to all charges. The trial court dismissed the OMVI charge as an allied offense and sentenced Appellant. Appellant filed a timely appeal.
 {¶ 17} In his sole assignment of error, Appellant asserts that the trial court erred in concluding that the warrantless entry into his home was justified and in overruling the Motion to Suppress Evidence.
 {¶ 18} In a motion to suppress, the trial court assumes the role of trier of fact and, accordingly, is in the best position to resolve questions of fact and evaluate witness credibility. See, e.g., State v.Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, citing State v.Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583; see, also, State v.Williams (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141. Thus, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594, 621 N.E.2d 726. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Ornelas v. United States (1996), 517 U.S. 690, 116 S.Ct. 1657,134 L.Ed.2d 811; State v. Klein (1991), 73 Ohio App.3d 486, 488,597 N.E.2d 1141; Williams; Guysinger.
 {¶ 19} The Fourth Amendment to the United States Constitution guarantees the right of people "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." SeeWilson v. Arkansas (1995), 514 U.S. 927, 931, 115 S.Ct. 1914,131 L.Ed.2d 976; New Jersey v. T.L.O. (1985), 469 U.S. 325, 337, 105 S.Ct. 733,83 L.Ed.2d 720; also see AL Post 763 v. Ohio Liquor Control Comm.,82 Ohio St.3d 108, 111, 1998-Ohio-367, 694 N.E.2d 905, 908. It is well settled law that, absent consent, the Fourth Amendment prohibits warrantless entry into a home to make an arrest unless there is both probable cause for the arrest and the existence of exigent circumstances. See Payton v. New York (1980), 445 U.S. 573, 100 S.Ct. 1371,63 L.Ed.2d 639; Johnson v. United States (1948), 333 U.S. 10, 13-15, 68 S.Ct. 367,92 L.Ed. 436; Cleveland v. Shields (1995), 105 Ohio App.3d 118, 121,663 N.E.2d 726, 728; State v. Jenkins (1995), 104 Ohio App.3d 265, 268,661 N.E.2d 806, 808.
 {¶ 20} The State bears the burden of establishing exigency from the totality of the circumstances involved. Welsh v. Wisconsin (1984),466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732; State v. Sladek
(1998), 132 Ohio App.3d 86, 724 N.E.2d 488; State v. Brooks (June 27, 1995), Franklin App. No. 94APA03-386. The trial court found that the State met its burden by establishing (1) that the officers were in "hot pursuit" of Appellant, and (2) that the officers had probable cause to believe that Appellant had unlawfully entered 835 Adams Avenue.
 {¶ 21} It is true that one of the exigent circumstances justifying a warrantless entry into a home is when police are in "hot pursuit" of a fleeing suspect. See United States v. Santana (1976), 427 U.S. 38,42-43, 96 S.Ct. 2406, 49 L.Ed.2d 300; Warden v. Hayden (1967),387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782. The trial court also correctly noted that, under the holding of City of Middletown v.Flinchum, 95 Ohio St.3d 43, 2002-Ohio-1625, 765 N.E.2d 330, police can make a warrantless entry into a residence under the "hot pursuit" doctrine even when they are pursuing a suspect who committed a misdemeanor rather than a felony. However, we conclude that neitherFlinchum nor the "hot pursuit" doctrine applies here.
 {¶ 22} In Flinchum, Middletown police officers observed the appellant spinning his car tires and stopping and then rapidly accelerating his car, causing the car to fishtail. 95 Ohio St.3d at 43. The officers attempted to approach Flinchum's vehicle twice but Flinchum fled from the police on both occasions. Id. Finally, the officers observed Flinchum standing on the driver's side of his parked car. Id. When Flinchum saw the officers stop their cruiser in front of his car, he ran towards the rear entrance of a house. Id. One of the officers repeatedly yelled "Stop" and "Police," but Flinchum continued to run. Id. at 43-44. As the pursuit continued, the officer heard a rear screen door slam and then observed Flinchum standing in his kitchen approximately five feet inside his home. Id. at 44. Without Flinchum's permission, the officer entered his home and arrested him. Id.
 {¶ 23} The Court rejected the argument that since the traffic violation was only a misdemeanor, the police officers were precluded from entering Flinchum's home to arrest him. Relying on United States v.Santana (1976), 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300, the Court noted that a suspect cannot avoid arrest simply by outrunning pursuing officers and finding refuge in his home. Hot pursuit "need not be an extended hue and cry `in and about [the] public streets.'"427 U.S. at 43, quoting the trial court. "A suspect may not defeat an arrest which has been set in motion in a public place * * * by the expedient of escaping to a private place." Id.
 {¶ 24} However, unlike Flinchum, in this case there was no "hot pursuit." As Appellant correctly notes, the "hot pursuit" doctrine only applies in instances where the police pursue a suspect from a publicplace into a private place. See Welsh v. Wisconsin (1984), 466 U.S. 740,104 S.Ct. 2091, 80 L.Ed.2d 732 (stating that on facts of case, hot pursuit argument is unconvincing because there was no immediate or continuous pursuit of the petitioner from a scene of the crime); City ofColumbus v. Lewis (1991), 77 Ohio App.3d 356, 602 N.E.2d 335 (holding hot pursuit doctrine inapplicable where police made warrantless entry into a home that witnesses indicated suspect had entered). Here, the officers never observed, much less pursued, Appellant in a public place. Officer Buchanan testified that the first time he saw Appellant, Appellant was sitting in his living room. Therefore, we cannot justify the warrantless entry into Appellant's home by the "hot pursuit" doctrine.
 {¶ 25} Next, we consider whether the officers' warrantless entry was justified under the emergency exception to the Fourth Amendment. In essence, the trial court concluded that an emergency, i.e. a possible burglary in progress, existed so that the entry was appropriate.
 {¶ 26} In State v. Overholser (July 25, 1997), Clark App. No. 96-CA-0073, the Second District considered the "emergency exception" to the Fourth Amendment prohibition against warrantless entries. InOverholser, the Clark County Sheriff's Department received a call from a security company indicating that an alarm had signaled from the garage/rear door area of a customer's residence. A deputy dispatched to investigate the alarm observed a car in the garage and a purse in the kitchen; however, no one answered the telephone call placed by the department's dispatch. The deputy discovered that the rear door of the residence was unlocked but observed no signs of forced entry. After a backup officer arrived, the deputy entered the residence to check for possible intruders. During the search, the deputy discovered marijuana residue and paraphernalia, as well as a baggie of marijuana, but no intruders. The deputy secured a search warrant for the premises and seized the items. Overholser argued that the deputy's initial entry was unlawful and, therefore, the evidence must be suppressed.
 {¶ 27} In rejecting Overholser's argument, the Second District recognized the "emergency exception" to the Fourth Amendment prohibition against warrantless entries. Under this exception, the court noted: "a police officer, even absent a warrant or probable cause, may lawfully enter a structure, including a private home, when the totality of the facts and circumstances known to the officer give rise to a reasonable belief that immediate entry is necessary to either protect that property or assist people inside who may be danger or in need of immediate aid." Id., citing Ringel, Searches, Seizures, Arrests and Confessions, Section 10.5(a).
 {¶ 28} The court went on to state: "[w]hen police reasonably believe that a burglary is in progress or has occurred at a particular structure, an immediate warrantless entry undertaken to investigate and protect that property and assist any victims inside who may be in danger or in need of immediate aid has been upheld by the courts as a reasonable search." Id., citing LaFave, Search and Seizure, Section 6.6(a) and (b). See, also, State v. Scales, Licking App. No. 01-CA-00110, 2002-Ohio-2506
(warrantless entry justified where police investigating unrelated matter in same apartment complex observed rear door of appellant's residence was damaged, i.e. the screen door was broken, the glass door was open and the locking mechanism was broken); State v. Myers, Marion App. Nos. 9-02-65 and 9-02-66, 2003-Ohio-2936 (warrantless entry upheld where 911 hang-up call received which could not be returned, no answer to police knocks on door, television on, and neighbor reported that appellants had left earlier that day but was uncertain if children had left with appellants).
 {¶ 29} In determining whether the totality of the facts and circumstances known to the officer give rise to a reasonable belief that immediate entry is necessary, we must apply an objective standard. LaFave, supra, at 6.6(a), citing Root v. Gauper (C.A. 8, 1971),438 F.2d 361. Thus, it is irrelevant whether the entering officer subjectively believed that immediate entry was required; the proper analysis requires us to ask whether a prudent and reasonable officer would see a need to act. Id., citing Wayne v. United States (C.A.D.C. 1963), 318 F.2d 205. The officer must "be able to point to specific and articulable facts which, taken with rational inferences from those facts, reasonably warrant that intrusion." Id., citing State v. Sanders
(Wash.App. 1973), 506 P.2d 892. Thus, the analysis focuses on objectively reasonable belief, not the higher standard of probable cause.
 {¶ 30} In conducting the analysis, courts must vigilantly guard against false reliance on the emergency exception when the true purpose of the entry was to seek out evidence of a crime or to make an arrest. See LaFave, supra, at 6.6(a) and (b). See, also, People v. Mitchell
(N.Y. 1976), 347 N.E.2d 607 (holding that when an entry is made pursuant to the emergency exception, the court should consider whether it was primarily motivated by the intent to arrest and seize evidence).
 {¶ 31} Here, Officer Buchanan testified that he was suspicious of Appellant's presence in the house because he heard a door slam in the early morning hours, observed Appellant sitting in a dark living room talking on the phone, and because Appellant failed to respond to the officers' repeated knocks and the flashlights shined into the residence. The court cited these reasons as well as the fact that the back door was "insecure" in support of its emergency finding. It is unclear from the record whether the door was wide open or simply unlocked. Obviously, a wide open door is more indicative, though certainly not conclusive, of a break-in than a door which has simply been left unlocked. However, we cannot assume that the door was ajar as there is no basis in the record for such a finding.
 {¶ 32} We must conclude, based on these facts as well as the other evidence, that a prudent and reasonable officer would not have concluded that a warrantless entry was necessary to protect life or property. In doing so, we focus on the following facts. First, the entering officers knew that a police report had previously been filed regarding the wrecked van and that the report had been taken from 835 Adams Avenue, the very address where they found Appellant. They also knew the report was made not by the female owner, but rather by a male permissive user of the van, who apparently lived at or had some connection with that address. According to Sgt. Cunningham, Officer Buchanan approached that particular residence for two reasons: (1) because the officers knew that a report regarding the vehicle in question had been received from that house; and (2) because he heard a door slam in that vicinity. Therefore, it appears that the officers believed they might find the individual who was driving the subject van by searching at that residence. We also note that the officers had an eyewitness description of the man they were seeking and that Appellant apparently fit that description.
 {¶ 33} Under other circumstances, Appellant's failure to acknowledge the officers might reasonably be attributed to the fact that Appellant was not authorized to be at the residence. However, it is doubtful under these facts, given that Appellant made absolutely no effort to hide or escape after being observed by the officers. Moreover, there are many reasons why an individual might refuse to respond to knocking police officers in the middle of the night. The most obvious reason Appellant would refuse to answer the door is because he chose to exercise his Fourth Amendment protection. Given the circumstances, a reasonable officer would likely conclude that Appellant was not ignoring the officers because he did not belong in the house, but because he did not want to be questioned or arrested — especially since he made no furtive movements.
 {¶ 34} Lastly, we note that the totality of the circumstances described by the officers doesn't evidence that a burglary was in progress. Many residents return to their homes in the wee hours of the morning for various reasons, i.e. working a graveyard shift, attending a social event, or returning from a trip. A door slamming in the middle of the night, that door being left "insecure," and an individual talking on the telephone in the dark, are not a sufficient basis to allow police to conduct a warrantless entry of a home on suspicion of burglary. In other cases where warrantless entries have been upheld based on suspicions of burglary, far more suspicious activity was involved, i.e. the discovery of an open door which bore evidence of being pried open, activation of a burglar alarm, the observation of lights on within and strange cars parked about a house whose occupants a neighbor says are on vacation, or an unexplained 911 call. LaFave, supra, at 6.6(b); Scales, supra; Myers,
supra. Given the low level of "suspicious" activity here and the fact that the house was surrounded by the officers so Appellant could not escape or even leave the room without being observed, one officer could easily have left to obtain a warrant while the other two remained to guard the house and ensure the safety of any occupants and property.
 {¶ 35} We are not suggesting that officers should always obtain a search warrant when they suspect a burglary is in progress. Obviously, when the protection of life or property is at issue, officers must often act immediately. We also recognize that "hindsight is 20/20" and that police officers must often act quickly without the benefit of extended reflection. Thus, we are not critical of the officers who faced a difficult choice in "the heat of the moment." Unlike the officers, we are afforded the luxury and the duty of reviewing the situation with retrospection. Thus, we must consider the objective reasonableness of the officers' actions in performing our sworn duty to uphold the constitutional protection against unreasonable searches.
 {¶ 36} Because we conclude that the warrantless entry into Appellant's residence violated his Fourth Amendment rights, Appellant's sole assignment of error is sustained. We reverse the judgment and remand the matter to the trial court for further action consistent with this opinion.
Judgment Reversed and Cause Remanded.
Evans, P.J. and Kline, J., concur in Judgment and Opinion.