[Cite as *State v. Freeman*, 2011-Ohio-5651.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95608**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEANGELO FREEMAN

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-527332

**BEFORE:**   Stewart, P.J., Sweeney, J., and Rocco, J.

**RELEASED AND JOURNALIZED:**   November 3, 2011

**ATTORNEYS FOR APPELLANT**

Andreas Petropouleas
Oscar E. Rodriguez
John W. Martin Co. & Associates, L.P.A.
75 Public Square, Suite 1414
Cleveland, OH   44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Marc D. Bullard
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 9th Floor
Cleveland, OH   44113


MELODY J. STEWART, P.J.:

{¶ 1}   This case is one of three criminal appeals originating from the same series of events.[1]

{¶ 2}   Defendant-appellant, Deangelo Freeman, appeals from the trial court's denial of his motion to suppress and asserts that there was no probable cause to support the search and seizure resulting in his convictions, and that exigent circumstances were concocted by law enforcement officials.   Freeman additionally claims that his convictions are against the manifest weight of the evidence, and that the trial court erred

---

[1]The other appeals are *State v. Atkinson*, 8th Dist. No. 95602 and *State v. Creighton*, 8th Dist. No. 95607.

when it imposed consecutive sentences absent requisite findings pursuant to R.C. 2929.13(E).

**{¶ 3}** On February 28, 2008, the detectives from the Cuyahoga County Sheriff's Office observed and then arrested an individual for participating in a drug transaction. In lieu of proceeding with criminal charges against him, the sheriff's office elected instead to solicit and secure his cooperation as a confidential informant ("CI"). The CI provided information stating that he had purchased ecstasy from Freeman (a.k.a "Alo") at a certain address on several instances. The detectives and the CI proceeded to that address where they observed a black Cadillac Escalade parked in front of the residence. The CI informed them that the vehicle was associated with the residence. The detectives then decided to utilize the CI to stage a controlled drug buy.

**{¶ 4}** The CI placed a recorded call to Freeman to arrange the purchase of a "jar" (100 pills) of ecstasy at the targeted address. The CI was searched and then provided with "buy" money, a recording device, and code words to signal that the drug deal had been accomplished. The residence was placed under surveillance by the detectives. A co-defendant, Lashawn Atkinson, exited the residence, entered the black Cadillac, and drove away. The detectives followed him and when Atkinson failed to observe a stop sign, the detectives made a traffic stop. Atkinson was subsequently arrested for driving under suspension, and the search incident to arrest found him to be in possession of a firearm, four tablets of Viagra, and $2,216 in cash.

**{¶ 5}** The stakeout at the target address resumed, and the CI proceeded to the residence and knocked on the front door but no one answered. He made another recorded call to Freeman, who advised the CI that his acquaintance, Atkinson, had moments ago been arrested and that a vehicle matching the description of the undercover car utilized in the arrest was parked down the street from the target residence. After a brief conversation, Freeman and co-defendant Deondray Creighton arrived at the residence. They parked in the driveway, met with the CI, then the three entered the residence.

**{¶ 6}** The detectives monitored conversations between Freeman and the CI, and after the CI uttered the predetermined code words, the detectives proceeded to the front and perimeter of the home to arrest the occupants upon their exit. Freeman opened the front door then abruptly slammed and secured it after realizing that law enforcement was on the front porch. The detectives overheard a flurry of commotion inside the residence and interpreted it to be related to the destruction of evidence, since they also heard a command to "flush it" via their electronic wire. The detectives testified that concerns for the CI's safety, as well as the potential destruction of evidence, prompted them to forcibly enter the residence through an adjacent front porch window. Upon gaining entry, they encountered Freeman and the CI near the stairs leading to the second floor, and Creighton seated on the toilet of an upstairs bathroom. The detectives hurried to the basement of the dwelling and fractured the sewer system's soil stack in an attempt to retrieve drugs they believed to have been flushed, but no drugs were recovered

**{¶ 7}** Freeman and Creighton were patted down and arrested, and the "buy" money supplied to the CI was found in Freeman's pants pocket. The detectives deceptively informed Freeman that ecstacy pills had in fact been retrieved and that DNA testing would validate his possession of the drugs. Freeman verbally acknowledged that they were probably correct. The CI was searched and had no drugs on him. The detectives conducted a protective sweep of the premises and discovered two marijuana "grow" labs in plain view. The detectives then obtained a search warrant.

**{¶ 8}** The warrant search uncovered: (1) torn and intact plastic baggies; (2) three cell phones; (3) $420 from a couch console; (4) a loaded handgun with an extra magazine; (5) a gas bill for the residence in Atkinson's name; (6) an electric bill, foreclosure notice, and tax statement for the residence in Freeman's name; (7) a residential lease in Creighton's name; (8) a plastic baggie containing ecstasy; (9) Viagra pills; (10) 41 potted marijuana plants; (11) grow lights and pots; (12) ductwork for ventilation and high watt ballasts used to facilitate a growing operation; and (13) plant food and plant chemicals.

**{¶ 9}** On December 15, 2008, Freeman was indicted, and on August 7, 2009, re-indicted with a superseding nine-count indictment for trafficking and possession of methamphetamines with schoolyard, firearm, and forfeiture specifications; manufacturing, cultivating, trafficking, and possession of marijuana; having a weapon under disability; carrying a concealed weapon; and possessing criminal tools. In response, he filed a motion to suppress the evidence and a hearing took place on

September 22, 2009. Freeman's motion to suppress was denied on October 30, 2009, and all three co-defendants were jointly tried on July 12, 2010.

{¶ 10} The jury found Freeman guilty on all nine counts contained in the indictment, and the trial court sentenced him to 13-years incarceration. Freeman then filed a notice of appeal. On March 29, 2011, this court sua sponte remanded the case to the trial court for the purpose of correcting its sentencing entry to resolve forfeiture specifications, thus rendering the trial court's order final and appealable.

{¶ 11} In his first assignment of error, Freeman argues that the warrantless search of the premises violated his Fourth Amendment rights because probable cause was lacking and exigent circumstances were manufactured by the officers. Freeman claims that the information provided by the newly-minted CI was unreliable and could not have, standing alone, supported the petition for a warrant. He also states that information provided by the CI associating him with the black Cadillac truck driven by Atkinson is demonstrative of the CI's untrustworthy predisposition. Freeman contends that trial testimony reveals the detectives' preordained game plan to conduct a warrantless entry and search of the premises, since they testified to as much by repeatedly referring to an "entry plan" and "entry team." He alleges that the detectives entered the dwelling prior to ascertaining that the CI had in fact purchased illegal drugs. Finally, Freeman notes that the CI's shout of "flush it" came only after the detectives blatantly surrendered their surveillance positions in order to create the manufactured exigent circumstances.

{¶ 12} The state contends that the exigent circumstances exception to a warrantless search is applicable in the instant case, since protection of the CI along with preservation of evidence was paramount. The state argues that probable cause is present since warrantless entries based solely on listening to the completed drug transaction of a CI have previously passed legal muster. On this occasion, the state asserts that probable cause was provided the instant the drug transaction was heard.

{¶ 13} "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard." *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172.

{¶ 14} "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Fourth Amendment to the United States Constitution. Probable cause "is a fluid concept, to be based on the totality of the circumstances, and not reduced to a neat set of legal rules." *State v. Ingram* (1984), 20 Ohio App.3d 55, 61, 484 N.E.2d 227 citing *Illinois v. Gates* (1983), 462 U.S. 213, 232-33, 103 S.Ct. 2317, 76 L.Ed.2d 527. Probable cause exists when law enforcement has reasonably trustworthy information that is sufficient to

convince a person of reasonable caution that contraband or evidence is at the location or place to be searched. *Beck v. Ohio* (1964), 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142; *Carroll v. U.S.* (1925) 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.

{¶ 15} "[W]here the initial impetus for an arrest is an informer's tip, information gathered by the arresting officers can be used to sustain a finding of probable cause for an arrest that could not adequately be supported by the tip alone." *Whiteley v. Warden, Wyo. State Penitentiary* (1971), 401 U.S. 560, 567, 91 S.Ct. 1031, 28 L.Ed.2d 306, citing *Draper v. United States* (1959), 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. When determining if probable cause is present, information and tips received from informants is but one factor to be considered within the totality of the facts and circumstances known to law enforcement. *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527.

{¶ 16} Law enforcement may not enter an individual's home to effect a warrantless arrest or search absent exigent circumstances, and as a general rule, "warrantless searches are, per se, unreasonable, and therefore invalid unless they fall within one of the established exceptions." *Payton v. New York* (1980), 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639; *State v. Morrison*, 8th Dist. No. 88129, 2007-Ohio-3895, ¶9; *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. Police officers are not permitted to intentionally initiate exigent circumstances to legitimize a warrantless entry into a private residence. *State v. Jenkins* (1995), 104 Ohio App.3d 265, 270, 661 N.E.2d 806. Exigent circumstances exist in situations "where the inevitable delay

incident to obtaining a warrant must give way to an urgent need for immediate action." *U.S. v. Morgan* (C.A.6, 1984), 743 F.2d 1158, 1162. A warrantless entry by law enforcement is permissible to prevent "the imminent destruction of vital evidence," and also "to protect or preserve life or avoid serious injury." *Wong Sun v. United States* (1963), 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441, *Mincey v. Arizona* (1978), 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290.

{¶ 17} While Freeman is correct in his argument that a mere tip from a newly-minted confidential informant of questionable reliability would not suffice to provide probable cause for the issuance of a warrant, the information provided by the CI was nevertheless adequate for the detectives to initiate a controlled drug buy. Probable cause that an illegal drug transaction had taken place emerged when the detectives listened to the transaction by audio surveillance and overheard the completed drug sale.

{¶ 18} Furthermore, law enforcement's establishing of a perimeter outside the residence for the purpose of apprehending offenders involved in unlawful drug activity cannot be rationally equated with self-created exigent circumstances. Freeman had previously become alerted to the presence of law enforcement because he observed an unmarked police vehicle in the vicinity of the residence, and had stated as much to the CI prior to entering the home to complete the drug sale.

{¶ 19} Detective Zickes testified that after the sale was completed, Freeman opened and then abruptly shut the front door when he spotted the detectives. Under the circumstances, reasonable minds could conclude that the CI could be in danger if

Freeman or Creighton suspected his involvement in the operation. The potential destruction of evidence provided an additional exigency, since the detectives testified that they overheard the order to "flush it."

{¶ 20} Based upon the totality of the circumstances, probable cause, as well as exigent circumstances, were present and justified the initial entry by the detectives. After conducting a protective sweep of the residence, the detectives obtained a warrant based upon contraband in plain view. Accordingly, Freeman's first assignment of error is overruled.

{¶ 21} Freeman, in his second assignment of error, argues that his resulting convictions are against the manifest weight of the evidence because no ecstasy pills were ever recovered and the CI's testimony lacked credibility.

{¶ 22} A weight of the evidence calculus involves "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten* (1986), 33 Ohio App.3d 339, 515 N.E.2d 1009, paragraph one of the syllabus.

{¶ 23} Here, the potential unreliability of the CI and the failure to recover large quantities of ecstasy is wholly offset by tangible as well as circumstantial evidence of guilt. The detectives testified about the recording of the drug buy that captures Freeman's voice conducting an illegal drug sale. The buy money provided to the CI was found on Freeman. Lieutenant Caraballo testified that he misrepresented to Freeman that drugs had been recovered from the soil stack, and Freeman conceded to him that his DNA would likely be recovered from the pills. An electric bill, gas bill, foreclosure notice, tax bill, and other miscellaneous paperwork found on the scene was addressed to Freeman. A sophisticated marijuana grow operation occupied several areas of the residence. Evidence of guilt is both weighty and significant. Freeman's second assignment of error is overruled.

{¶ 24} Lastly, Freeman maintains that the trial court erred when it did not make findings to justify consecutive sentences as required by statute.

{¶ 25} Ohio's sentencing guidelines previously contained a presumption that sentences were to be served concurrently, and a trial court was, in most instances, required to make additional findings of fact prior to the imposition of consecutive sentences. Thereafter, portions of Ohio's felony sentencing structure were found to be in conflict with the United States Supreme Court's decision in *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, and as a result, unconstitutional. In *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, the supreme court severed the offending portions of the applicable sentencing statutes. Consequently, the

portions of the statutes previously mandating judicial fact-finding no longer have legal effect. Instead, for purposes of consecutive sentencing, a trial court must only "consider" the statutory factors. Id. at ¶42.

{¶ 26} Therefore Freeman's third assignment of error is also without merit.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


MELODY J. STEWART, PRESIDING JUDGE

JAMES J. SWEENEY, J., CONCURS;

KENNETH A. ROCCO, J., CONCURS IN
JUDGMENT ONLY WITH SEPARATE
OPINION

KENNETH A. ROCCO, J., CONCURRING IN JUDGMENT ONLY:

**{¶ 27}** I concur in judgment only. I write separately to express my concern about one of the reasons the majority relies on to justify the forced entry into the residence of the appellant Freeman.

**{¶ 28}** The majority states, "[c]oncerns for the CI's safety, as well as the potential destruction of evidence, prompted them to forcibly enter the residence ***." (Emphasis supplied.) At oral argument, however, both sides conceded that there is no evidence in the record Franklin (CI) was in danger. Indeed, Franklin was trying to leave the residence with the pills in hand when the detectives were approaching the front porch to enter the residence.

**{¶ 29}** The detectives listened via the transmitter as the controlled buy occurred. Instead of waiting for Franklin to leave the 89th Street residence with pills in hand, when the detectives heard money being counted and a description of the Ecstasy, they immediately proceeded to the front door to apprehend Freeman. At the same time, Franklin had walked to the front door and was about to exit when Freeman saw the police approach the porch to enter the home. Freeman slammed the interior door shut and locked it. Also, on the outside of the front door was an exterior iron security door that was shut and locked. The detectives then heard Franklin shout "flush the shit." Franklin testified that following the detectives' arrival, Freeman grabbed the Ecstasy from Franklin and ran upstairs.

**{¶ 30}** Unable to enter the home, the detectives smashed through a front window and gained entry without a warrant. Detective Zickes testified that once inside, he saw

Freeman coming down the stairs from the second floor and apprehended him. Another detective observed Freeman at the bottom of the stairs and Franklin about half-way up the stairs to the second floor.

{¶ 31} The state never explained why the detectives did not wait for the CI, Franklin, to exit the residence with the one hundred Ecstasy pills in hand, thereby establishing him as a confidential reliable informant (CRI) to set up future drug buys and/or a search of the residence with a warrant. Also unexplained is why Franklin shouted "flush the shit" after he saw the detectives approach the front porch. The buy appeared to be more out of control than "controlled."

{¶ 32} Nonetheless, the concerns for the potential destruction of evidence justified the detectives' forcible entry in the appellant Freeman's residence.

{¶ 33} For this reason I concur in judgment only.