[Cite as *Berea v. Collins*, 2014-Ohio-3822.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100836**

## CITY OF BEREA

PLAINTIFF-APPELLEE

vs.

## JOSHUA A. COLLINS

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Berea Municipal Court
Case No. 12 TRC 00242

**BEFORE:** McCormack, J., Kilbane, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** September 4, 2014

**ATTORNEY FOR APPELLANT**

Joseph F. Salzgeber
Foth & Foth Co., L.P.A.
11221 Pearl Road
Strongsville, OH 44136


**ATTORNEY FOR APPELLEE**

James N. Walters
Prosecutor
City of Berea
11 Berea Commons
Berea, OH 44017

TIM McCORMACK, J.:

{¶1} At one o'clock in the morning, on a snowy January 16, 2012, in the city of Berea, two Berea police officers forced open the door of a residence on Bridge Street, without a warrant, in order to arrest Joshua A. Collins for an alleged misdemeanor traffic violation. Mr. Collins argues before this court that the Fourth Amendment to the United States Constitution and its companion language in the Ohio Constitution guarantee that he was entitled to be "free from unreasonable searches and seizures" in his home and that the police action of that night was inherently unconstitutional.

{¶2} The city of Berea, while neither appearing nor filing a brief before the appellate court, argued before the trial court that the police officers were in "hot pursuit" of Mr. Collins and were within their right to force the door open to arrest him. After a thorough review of what has come to be called "exigent circumstances," which translates into possible compelling reasons or exceptional circumstances that would have justified this warrantless forced entry, we do not find either such compelling reasons or circumstances that support the exercise of such an invasive means of arrest. Neither a true "hot pursuit" nor truly significant exigent circumstances supported this forced entry into an occupied dwelling. We find that our Constitutions contemplated just such events as occurred that night in Berea, and their protections were and are meant to balance the assurances of security in one's private dwelling against the urgency of more invasive police procedures.

**{¶3}** Finding merit to the appeal, we reverse the judgment of the Berea Municipal Court that denied Collins's motion to suppress.  The matter is reversed and remanded.

## Substantive Facts and Procedural History

**{¶4}**  On January 16, 2012, Collins was charged by the city of Berea with operating a vehicle under the influence ("OVI"), having a prohibited blood alcohol level, and speeding.  He filed a motion to suppress evidence obtained by the police as a result of a warrantless entry into his home.  The parties stipulated to Ptl. Ted Makrinos's written statement regarding the incident.  He recounted the incident, which occurred around 1:00 a.m. as follows:

> I was going west on E. Bridge St. when a vehicle (the only one on the road) started travelling [sic] east on Bridge St. at a high rate of speed.  My radar indicated that the vehicle was travelling [sic] at 50 mph on a 25 mph zone. I stopped on the road and was waiting for the car to pass me by so I can turn around and pull it over.  The vehicle started slowing down and instead of passing by, turned left in to a drive way two to three drives in front of me. I pulled in the drive way behind the car (189 E. Bridge) and as I was ready to get out, the driver a white male got out went to the passenger side took out what appeared to a [sic] guitar case and some other items and started walking towards the police car.  I stated to the driver I wanted to talk to him because he was speeding and he said ok let me put my stuff by the steps so they are not on the snow.  When he said that I noticed that he had a slurred speech and he also appeared to be under the influence.
>
> I ran the plate on my MDT and as I got out of the car, the male ran up the steps and locked the door behind him.  I knocked on the door several times and advised the male to open the door.  The male stated I don't have to open the door for you and you can go and get a warrant.  At that time I advised dispatch of the situation and Sgt. Grecol arrived on the scene. Again I asked the   male to open the door several times and I advised him if he did not I would force the door and enter the premises.  Sgt. Grecol also advised the male to open the door or we will force it in.  The male refused again.  I state to the male I will count from 5 to 1 and then I will force the door in.  I started 5, 4, and when I got to 3 it appeared that the male

barricaded the door with his body. When I got to one I forced the door open and the male was behind it. As Sgt. Grecol and I were giving him verbal commands and were trying to place the cuffs on him, a female (Aleece E. Roach) came from inside the house and I asked her why she did not open the door. She stated he told me not to open the door. The male identified as Mr. Joshua A. Collins was arrested and placed in the back of 1661. * * *

{¶5} The officers then took Collins to the Berea police station for a field sobriety test. He failed the test and his breath alcohol concentration measured 0.189, exceeding the legal limit.

{¶6} Following the suppression hearing, the Berea Municipal Court denied Collins's motion. Collins then pled no contest to the OVI charge, and the prosecutor dismissed the remaining charges. The court found him guilty of OVI and sentenced him to a fine of $600 plus court costs and a jail term of three days, with the option of participating in a 72-hour program and one year of basic probation in lieu of the jail term. The court stayed the execution of the sentence pending appeal.[1]

{¶7} Collins raises one assignment of error on appeal. He argues that the trial court erred in denying his motion to suppress. The issue confronting us is whether the police officers' warrantless forced home entry to effect the arrest of an individual suspected of OVI offends the Fourth Amendment under the totality of the circumstances existing in this case.

---

[1]The original appeal, *Berea v. Collins*, 8th Dist. Cuyahoga No. 99406, 2013-Ohio-4191, was dismissed by this court for lack of a final appealable order because the trial judge failed to adopt the sentence imposed by the magistrate.

**{¶8}** An appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Preztak*, 181 Ohio App.3d 106, 2009-Ohio-621, 907 N.E.2d 1254, ¶ 22 (8th Dist.). Once we accept the factual findings as true, however, "'we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard.'" *Id*., quoting *State v. Lloyd*, 126 Ohio App.3d 95, 709 N.E.2d 913 (7th Dist.1998).

## Warrantless Entry Into a Home

**{¶9}** The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution guarantee the right of the people to be free from unreasonable searches and seizures. *See State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001). The Fourth Amendment states,"The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause * * *." Evidence obtained from a search or seizure in violation of the Fourth Amendment is excluded. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

**{¶10}** This case involves the police officers' warrantless forced entry into a home to effect a misdemeanor arrest. The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United*

*States Dist. Court for the E. Dist. of Michigan*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). Absent exigent circumstances, a warrantless search or seizure effected in a home is per se unreasonable. *State v. Freeman*, 8th Dist. Cuyahoga No. 95608, 2011-Ohio-5651, ¶ 16, citing *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The idea behind the concept of exigent circumstances is that a delay could enable the suspect to escape, creating a danger to the public or police, or to destroy the evidence. "Exigent" is defined in Black's Law Dictionary as "requiring immediate action or aid; urgent." The courts in Ohio have identified exceptions to the warrant requirement that justify a warrantless search of a home: (1) an emergency situation, (2) search incident to an arrest, (3) "hot pursuit" of a fleeing felon, and (4) easily destroyed or removed evidence. *State v. Cheers*, 79 Ohio App.3d 322, 325, 607 N.E.2d 115 (6th Dist.1992); *State v. King*, 8th Dist. Cuyahoga No. 80573, 2003-Ohio-1143, ¶ 16.

{¶11} In these delineated situations, the exigent circumstances relieve the police of the need to obtain a warrant. The courts, however, have imposed on the state a heavy burden of demonstrating an exigent circumstance that would overcome the presumption of unreasonableness attached to all warrantless home entries. *Welsh v. Wisconsin*, 466 U.S. 740, 750-753, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). *See also State v. Letsche*, 4th Dist. Ross No. 02CA2693, 2003-Ohio-6942, ¶ 20; *State v. Brooks*, 10th Dist. Franklin No. 94APA03-386, 1995 Ohio App. LEXIS 2764, *10 (June 27, 1995). This court emphasized that, under the exigent circumstances exception, there must be

"compelling reasons" or "exceptional circumstances" to justify a warrantless entry. *State v. Lomax*, 8th Dist. Cuyahoga No. 86632, 2006-Ohio- 3725, ¶ 16, citing *Alliance v. Barbee*, 5th Dist. Stark No. 2000CA00218, 2001 Ohio App. LEXIS 1120 (Mar. 5, 2001), citing *State v. Moore*, 90 Ohio St.3d 47, 52, 734 N.E.2d 804 (2000). In common language, we review the warrantless entry and ask: was the entry so necessary as to be compelling; was it imperative that it be so immediate; was there no other good choice or option?

### **"Hot Pursuit"**

**{¶12}** At the suppression hearing, the city of Berea argued Ptl. Makrinos's "hot pursuit" of Collins justified the officer's warrantless entry into his home, and the trial court denied Collins's motion to suppress on that ground. Under this exception, a warrantless entry into a home to effectuate an arrest is permitted when the police are in "hot pursuit" of a fleeing felon. *United States v. Santana*, 427 U.S. 38, 42-43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). Underlying the "hot pursuit" exception is the idea that it is unrealistic to expect the police officers to stop in the middle of a chase to obtain an arrest warrant; as to do so may allow the suspect to escape and render the warrant subsequently obtained meaningless.

**{¶13}** *Santana* concerned a fleeing *felon*. The Supreme Court of Ohio, however, extended the "hot pursuit" exception to a warrantless entry of the home of a suspect who committed a misdemeanor traffic offense. *Middletown v. Flinchum*, 95 Ohio St.3d 43, 765 N.E.2d 330 (2002). In *Flinchum*, the police officers observed the appellant driving

erratically. He spun his car tires when the traffic light turned to green. He then stopped and rapidly accelerated his car, causing it to fishtail when it made a right turn. The officers decided to follow him and attempted to approach his vehicle twice. On both attempts, he fled from the police. Later, the officers found him standing on the driver's side of his parked car. When he saw the officers stop their cruiser in front of his car, he ran. One of the officers pursued him on foot, repeatedly yelling "Stop" and "Police," but he continued to run, toward his house. He then entered his house through the rear door. Without his permission, the officer entered his home and arrested him. He was subsequently charged with reckless operation of a vehicle and DUI. *Id*. at 43 - 44.

{¶14} The Supreme Court of Ohio saw no reason to differentiate the fleeing suspect who committed a misdemeanor traffic offense in that case and the fleeing felony in *Santana*. *Id*. at 45. It held that "[w]hen officers, having identified themselves, are in hot pursuit of a suspect who flees to a house in order to avoid arrest, the police may enter without a warrant, regardless of whether the offense for which the suspect is being arrested is a misdemeanor." *Flinchum* at syllabus. The court cautioned, however, that its holding did not give law enforcement "unbridled authority to enter a suspect's residence at whim or with a blatant disregard for the constraints of the Fourth Amendment." *Id*. at 45. The court carefully limited its holding to the circumstances existing in the case.

{¶15} "The question of whether an entry into a home by peace officers, acting without a warrant, is 'reasonable' requires a careful analysis of the sequential and

consequential events leading up to and including the entry. An entry can never be found 'reasonable' based solely upon the fact that criminal conduct, or contraband, was discovered within the residence." *State v. Russell*, 127 Ohio App.3d 414, 416, 713 N.E.2d 56 (9th Dist.1998), citing *State v. Williams*, 55 Ohio St.2d 82, 86, 377 N.E.2d 1013 (1978).

{¶16} Our thorough review of the sequence of events that took place early on January 16, 2012, reveals the tension between the protections afforded by the United States Constitution's Fourth Amendment against unreasonable searches and seizures and the flow of police work that night on Berea's Bridge Street. We are presented with the challenge of carefully balancing the mandates of guaranteed privacy protections against those of more immediate police action. This case presents as one where elements are present for both application of the Fourth Amendment protections and real time police work.

## Whether the Officer was in "Hot Pursuit"

{¶17} The undisputed evidence in this case shows that the police officer saw Collins's vehicle appear to be speeding shortly before Collins arrived at his home. At the time the officer was traveling on the opposite side of the road. Before the officer could turn around and pull Collins over for speeding, Collins pulled into his driveway, which was several driveways in front of the police cruiser. The police officer turned into the same driveway as well. Collins exited his car and walked towards the police car to talk to the officer. The officer indicated that he wanted to talk to Collins because he

was speeding. Collins said "ok" but stated he needed to put his guitar down on the door steps. The officer noted in his report that during the brief exchange, Collins had slurred speech and "appeared to be under the influence." After staying inside his police vehicle to run Collins's license plate information, the officer exited the police vehicle. At that point, Collins "ran up the steps" and locked the door behind him. The officer knocked on the door and ordered Collins to open the door. Collins then insisted the officer needed a warrant to enter his house. Collins blocked the door with his body. The officer, with his sergeant at his side, forced the door open and arrested Collins.

{¶18} *Flinchum* requires the police to not only identify themselves but, most notably, be in hot pursuit of a suspect. The circumstances of this case contrast sharply with *Flinchum*. In *Flinchum*, the suspect was aware of the presence of the police early on and he fled from the officers twice when they attempted to approach his vehicle. The suspect later left his car, and, when he realized the police vehicle was nearby, he again fled by running away while an officer chased him, yelling "Stop" and "Police" repeatedly.

{¶19} Here, Collins turned into his driveway before the officer had a chance to even turn around and follow him, much less "pursue" him. Collins already had parked his car before the police officer identified himself and indicated the reason for his presence. Even if we were to consider the officer's statement that he wanted to talk to Collins tantamount to a police order to "stop," the "pursuit" did not begin until the officer exited his vehicle to approach Collins. It ended almost as soon as it began, because

Collins immediately ran up the door steps and went inside his home. In *Flinchum,* the warrantless entry was justified by the need to apprehend a suspect who had aggressively fled from the police on three separate occasions — twice ignoring the pursuit by the police and then ran from the police while an officer chased him on foot and repeatedly commanded him to stop. The circumstances in this case did not add up to, and did not constitute, a pursuit. Nor can any recitation of the chronology add up to "hot."

{¶20} The courts, including this court, have been unwilling to weaken the scrupulously guarded Fourth Amendment protections of the home to secure an arrest and conviction for a traffic offense, where the prosecution did not meet its burden showing the police were in a "hot pursuit" of a fleeing suspect. *See, e.g.*, *Cleveland v. Lynch*, 8th Dist. Cuyahoga No. 98201, 2012-Ohio-5740 (officers' entry into the appellant's home following his involvement in a single-car accident was not justified under the "hot pursuit" exception because the officers were not in hot pursuit); *State v. Cross*, 4th Dist. Washington No. 12CA54, 2014-Ohio-1046 (the court did not find "hot pursuit" where the police officer never activated his cruiser's lights or sirens alerting the appellant of police presence before the appellant parked his vehicle in his driveway and went inside the garage); *Letsche*, 4th Dist. Ross No. 02CA2693, 2003-Ohio-6942 ("hot pursuit" exception did not apply because there was no pursuit in public place prior to the OVI suspect entering his own home).

{¶21} We are fully cognizant, here and otherwise, of the danger posed to the public by intoxicated drivers. Here, though, Collins had already arrived at his home and

was separated from his vehicle. His vehicle was blocked in the driveway by the police vehicle; thus, there was at that time little imminent threat to public safety. Furthermore, the possibility that Collins would escape if the police were to obtain a warrant appeared to be remote. Unlike the suspect in *Flinchum,* who fled from the police twice in his vehicle and then ran from the police on an extended foot chase, Collins went inside his house. He had been physically identified, his license plate run, and his address verified.

{¶22} It is quite apparent that the immediate warrantless entry into Collins's home was made to apprehend him for a field sobriety test and a measurement of his blood alcohol content so as to confirm the officer's suspicion that Collins was driving while intoxicated. We recognize the police officers' need to timely ascertain an OVI suspect's blood-alcohol level, because such evidence dissipates over time, and a delay caused by obtaining a warrant could affect the evidence for OVI. However, limitations on what the police can do to obtain and preserve evidence are carefully identified and limited by the courts applying the Fourth Amendment.

{¶23} Balancing the people's guaranteed right to dwell in reasonable security and freedom from intrusion with the police officers' need for acting swiftly to obtain and preserve evidence, we conclude the city did not demonstrate compelling exigent circumstances justifying police officers intruding into a private home to arrest an OVI suspect for the purposes of obtaining evidence of intoxication. The police had not been in a "hot pursuit" of the suspect.

{¶24} Finally, we note that for a warrantless entry to effect an arrest to be lawful, in addition to an exigent circumstance, the police still must have probable cause to arrest. *United States v. Johnson*, 256 F.3d 895 (9th Cir.2001). In this case, there is no clear showing of probable cause to arrest, because, prior to the entry, the only articulated reasons for the officer's belief that Collins was driving while intoxicated was his speeding and slurred speech. The lack of a well-supported showing of probable cause makes the intrusion in this case even less justifiable.

{¶25} The trial court in this case correctly cited the legal principle announced in *Flinchum,* 95 Ohio St.3d 43, 765 N.E.2d 330, but erroneously concluded that the police officer was in "hot pursuit" of Collins justifying a warrantless entry into his home. The warrantless entry violated Collins's Fourth Amendment rights. The sole assignment of error is sustained.

{¶26} The judgment of the Berea Municipal Court is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Berea Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

MARY EILEEN KILBANE, P.J., and
MELODY J. STEWART, J., CONCUR