[Cite as *State v. Cross*, 2014-Ohio-1046.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | Case No. 12CA54 |
| v. | : | |
| | : | DECISION AND |
| BRYAN E. CROSS, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | Released: 03/11/2013 |

APPEARANCES:

Angela Wilson Miller, Jupiter, Florida, for Appellant.

Paul Bertam, III, City Law Director, and Timsi Pathak, Assistant City Law Director, Marietta, Ohio, for Appellee.

Hoover, J.

{¶ 1} This is an appeal of a judgment from the Marietta Municipal Court wherein appellant Bryan E. Cross was convicted of OVI. Appellant had filed a motion to suppress alleging that evidence was obtained during a non-consensual search of his home and person. The trial court denied appellant's motion. The trial court found that the "hot pursuit" exception to the Fourth Amendment of the United States Constitution's prohibition on warrantless entries applied in this case. Afterwards, appellant changed his plea to "no contest" and was found guilty of OVI.

{¶ 2} The trial court made a clearly erroneous finding of fact. The trial court questioned the appellant's credibility as a result of the erroneous finding of fact. Because this case presents a close question on the issue regarding whether the "hot pursuit"

exception applies under the facts of this case, we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

{¶ 3} Appellant presents the following assignment of error:

THE TRIAL COURT ERRED IN DENYING APPELLANT CROSS'S

MOTION TO SUPPRESS AS THE STATEMENTS HE MADE IN

RESPONSE TO QUESTIONING AND THE SOBRIETY TEST

RESULTS WERE ELICITED IN VIOLATION OF HIS

CONSTITUTIONAL RIGHTS UNDER THE FOURTH AND

FOURTEENTH AMENDMENTS TO THE UNITED STATES

CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO

CONSTITUTION.

I.

FACTS & PROCEDURAL HISTORY

{¶ 4} On the night of March 15, 2012, Deputy Brian Rhodes of the Washington County Sheriff's Office was dispatched to the area of Mile Post 10 on State Route 555 in Decatur Township. A resident had called in a complaint about four-wheelers driving up and down the roadway. Deputy Rhodes patrolled the area for four-wheelers; but he did not locate them. He then decided to remain stationary in his patrol car at the intersection of State Route 555 and Big Run.

{¶ 5} While Deputy Rhodes was stationary, he noticed a vehicle back out of a driveway and drive towards him, going left of center for a short distance. The car then passed the deputy. Once the car passed him, Deputy Rhodes looked over his shoulder and saw the car turn left on to Bank Street without using a left turn signal. After

witnessing the traffic violations, Deputy Rhodes followed the vehicle until it stopped in the driveway where it first pulled out. Deputy Rhodes never activated the patrol car's lights or siren.

{¶ 6} The car pulled into the driveway and Deputy Rhodes pulled in behind the car. The driver of the vehicle, appellant Bryan E. Cross, was closing the door to his vehicle as Deputy Rhodes was pulling into the driveway and getting out of his vehicle. Deputy Rhodes testified that as soon as he exited his vehicle, he could smell the odor of an alcoholic beverage.

{¶ 7} Appellant proceeded towards his garage. According to Deputy Rhodes, when Deputy Rhodes was approximately twenty to twenty-five feet from the garage, he ordered appellant to stop; but the appellant did not stop. Deputy Rhodes testified that the appellant looked back and kept going. Deputy Rhodes further testified that the appellant did not run from him but he picked up his pace after acknowledging his presence. Deputy Rhodes testified that "it wasn't a pursuit, but yeah, I went towards him."

{¶ 8} According to Deputy Rhodes, when he initially made contact with appellant, they were "very near the threshold" of the garage. Deputy Rhodes testified that "[w]e may have been two steps in. We may have been two steps out. But it was near the threshold of the garage."

{¶ 9} Appellant testified that he heard the officer asking him to stop only after he was already ten to fifteen feet in his garage. Appellant responded by telling the deputy that he was in his house. Appellant did not run or flee from the deputy. Appellant further testified that Deputy Rhodes grabbed appellant's arm or shoulder area when they were

already in the garage.  The appellant admitted to hearing the car in the driveway; but he did not hear him shut the door.

{¶ 10}  Once Deputy Rhodes and appellant were in the garage, Deputy Rhodes administered the Horizontal Gaze Nystagmus test, the one leg stand, and the walk and turn test.  Appellant submitted to a portable breathalyzer test yielding a BAC reading of .143.  The garage door remained open throughout the interaction between Deputy Rhodes and appellant.  As a result of the stop and the tests administered, the appellant was arrested for OVI and transported to jail.

{¶ 11}  Appellant pled not guilty at his arraignment.  Thereafter, he filed a motion to suppress. Appellant sought to suppress "any evidence or testimony concerning any evidence seized during a pre-arrest, warrantless, non-consensual search of Defendant's home and person by Lt. B.P. Rhodes of the Washington County Sheriff's Department." Deputy Rhodes and appellant testified at the hearing on the Motion to Suppress.

{¶ 12}  On September 27, 2012, the trial court denied the Motion to Suppress. The trial court's findings of fact stated:

> …
>
> 7.  Defendant testified that he did not notice the officer's car or lights until he had crossed the threshold of the garage.
>
> 8.  Defendant further testified that he was already 10' -15' inside the garage when he heard the officer's command to stop.
>
> 9.  In contrast, the officer testified he had pulled into the driveway behind the Defendant's truck *with emergency lights activated* all before Defendant crossed into his garage.

10.  Lt. Rhodes testified he commanded the Defendant to stop before Defendant entered the garage. He testified that Defendant did not stop and instead hurried up.

11.  The court does not find the Defendant's testimony credible that he did not notice the cruiser or its emergency lights behind him in his driveway in the complete darkness at midnight or one o'clock in the morning.

12.  Because the Court **finds Defendant's testimony that he noticed neither the headlights or the emergency lights behind him in his driveway not credible**, the Court is not inclined to believe the balance of his testimony.

(Emphasis Added).

{¶ 13}  The trial court found the "hot pursuit" exception to the Fourth Amendment's prohibition against warrantless entries to be applicable here. The trial court stated that it was "not inclined to believe the balance of his testimony" based on the finding of fact that appellant did not notice the emergency lights behind him in his driveway.

{¶14}  The trial court denied the appellant's motion to suppress. As a result of the denial of the motion to suppress, appellant entered a change of plea from "not guilty" to "no contest."  On December 5, 2012 the trial court found appellant guilty of OVI, in violation of R.C. 4511.19, and sentenced appellant.  Appellant timely filed this appeal.

II.

ANALYSIS

{¶ 15}  In his sole assignment of error, appellant argues that the trial court erred when it denied his motion to suppress.  He contends his statements and the sobriety test results were elicited in violation of his constitutional rights under the Fourth Amendment of the United States Constitution and Section 10 of the Ohio Constitution.  Specifically, appellant argues that the police officer in this case entered his home without consent.  Appellant further argues that the officer was not in "hot pursuit" of him to justify the warrantless entry.

### A. Standard of Review

{¶ 16}  Our review of a trial court's decision on a motion to suppress presents a mixed question of law and fact.  *State v. Jones,* 4th Dist. Washington No.11CA13, 2012-Ohio-1523, ¶ 6. citing *State v. Roberts*, 850 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 10 and *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  When considering a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility.  *Id.*  Accordingly, we defer to the trial court's findings of fact if they are supported by competent credible evidence.  *Id.* citing *State v. Landrum*, 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th Dist.2000).  Accepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case.  *Id.* citing *Roberts* at ¶ 100; *Burnside* at ¶ 8.

### B. Reasonable Expectation of Privacy

{¶ 17}  The warrant requirement of the Fourth Amendment does not apply unless the complaining party has a constitutionally protectable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). "Modern

understandings of the Fourth Amendment recognize that it serves to protect an individual's subjective expectation of privacy if that expectation is reasonable and justifiable." *State v. Buzzard*, 112 Ohio St.3d 451, 2007-Ohio-373, ¶ 14, citing *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). Thus, a threshold issue in the instant case is whether the appellant maintained such an expectation of privacy in his garage.

{¶ 18} Here, appellant's garage is attached to his house. Appellee sets forth that since the garage door was open, appellant exposed himself to the public view. We are not prepared to hold that an open garage door nullifies appellant's reasonable expectation of privacy. *See State v. Cooper*, 2nd Dist. Greene No. 97-CA-15, 1997 WL 593754 *2 (Sept. 26, 1997). In *Cooper*, "the officers had to enter the garage before they could discover the seized evidence." *Id.* Similarly, Deputy Rhodes only discovered evidence leading to appellant's arrest after he entered the garage. Inside the garage he obtained results from the sobriety tests and appellant's statements, which were sought to be suppressed in this case. Therefore, as a threshold matter, we find that appellant had a reasonable expectation of privacy in his garage, subject to the protection of the Fourth Amendment to the United States Constitution.

## C. Hot Pursuit Exception

{¶ 19} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution guarantee the right of the people to be free from unreasonable searches and seizures. *See State v. Orr,* 91 Ohio St.3d 389, 391, 2001-Ohio-50, 745 N.E.2d 1036. These two provisions contain nearly identical language and

the Supreme Court of Ohio has interpreted them as affording the same level of protection. *Id.* "It is well settled law that, absent consent, the Fourth Amendment prohibits warrantless entry into a home to make an arrest unless there is both probable cause for the arrest and the existence of exigent circumstances." *State v. Letsche*, 4th Dist. Ross No. 02CA2693, 2003-Ohio-6942, ¶ 19, citing *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.E.2d 639 (1980); *Johnson v. United States*, 333 U.S. 10, 13-15, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *Cleveland v. Shields*, 105 Ohio App.3d 118, 121, 663 N.E.2d 726 (8th Dist.1995); *State v. Jenkins*, 104 Ohio App.3d 265, 268, 661 N.E.2d 806 (1st Dist.1995).

{¶ 20} The State bears the burden of establishing exigency from the totality of the circumstances involved. *Letsche* at ¶ 20, citing *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *State v. Sladeck*, 132 Ohio App.3d 86, 724 N.E.2d 488 (1st Dist.1998); *State v. Brooks*, 10th Dist. Franklin No. 94APA03-386, 1995 WL 390935 (June 27, 1995). One of the exigent circumstances justifying a warrantless entry into a home is when police are in "hot pursuit" of a fleeing suspect. *See United States v. Santana*, 427 U.S. 38, 42-43, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976).

{¶ 21} In *Santana*, the United States Supreme Court held that a suspect could not thwart a lawful arrest that began in a public place by retreating into a private place. *Id.* at paragraph two of the syllabus. The Ohio Supreme Court extended this exception to the pursuit of a suspect who committed a misdemeanor rather than a felony. *Middletown v. Flinchum,* 95 Ohio St.3d 43, 2002-Ohio-1625, 765 N.E.2d 330 (2002). This Court previously summarized the facts of *Flinchum* in *State v. Letsche*, 4th Dist. Ross No. 02CA2693, 2003-Ohio-6942, ¶ 22:

In *Flinchum,* Middletown police officers observed the appellant spinning his car tires and stopping and then rapidly accelerating his car, causing the car to fishtail. 95 Ohio St.3d at 43. The officers attempted to approach Flinchum's vehicle twice but Flinchum fled from the police on both occasions. *Id.* Finally, the officers observed Flinchum standing on the driver's side of his parked car. *Id.* When Flinchum saw the officers stop their cruiser in front of his car, he ran towards the rear entrance of a house. *Id.* One of the officers repeatedly yelled "Stop" and "Police," but Flinchum continued to run. *Id.* at 43–44. As the pursuit continued, the officer heard a rear screen door slam and then observed Flinchum standing in his kitchen approximately five feet inside his home. *Id.* at 44. Without Flinchum's permission, the officer entered his home and arrested him. *Id.*

{¶ 22}  The Court in *Flinchum* reasoned: "***we find no reason to differentiate appellant's offense and give him a free pass merely because he was not charged with a more serious crime.  The basic fact remains that appellant fled from police who were in lawful pursuit of him and who had identified themselves as police officers."  *Id.* at 45. Under *Flinchum*, "When officers having identified themselves, are in hot pursuit of a suspect who flees to a house in order to avoid arrest, the police may enter without a warrant, regardless of whether the offense for which the suspect is being arrested is a misdemeanor."

{¶ 23}  Appellee argues that the "hot pursuit" exception applies.  The State contends that appellant remained in the public view at all times during the facts of this case.  The State makes note that appellant never attempted to close his garage door,

exposing himself to the public even when he stepped into his garage. The State also contends that a "hot pursuit" occurred after Deputy Rhodes commanded the appellant to stop when both men were in appellant's driveway.

{¶ 24} The State relies upon *State v. Lake*, 7th Dist. Columbiana No. 08CO26, 08CO27, 2009-Ohio-3057, as a factually similar case where the Seventh District Court of Appeals affirmed a trial court's denial of a Motion to Suppress. In *Lake*, the Chief of Police and a fellow officer were driving home after a shift around 5:00 p.m. in an unmarked city SUV. *Id.* at ¶ 3. While in single lane traffic, a motorcycle rider passed the officers on the right side and drove through a red light. *Id*. at ¶ 4. The rider was not wearing a helmet and the Chief recognized him. *Id.* at ¶ 5. From prior interactions, the Chief knew where the Defendant lived so he proceeded to his residence. *Id.* There, the officers found Defendant straddling the motorcycle, walking it into his detached garage. *Id.* at ¶ 6. When Defendant was approximately fifteen to twenty feet from his open garage, the officer ordered him to stop several times and called him by name. *Id.* The officers followed defendant into his garage, where they discovered the odor of alcohol and the defendant's slurred speech. *Id.* at ¶ 7.

{¶ 25} Defendant was subsequently arrested and taken to the police station. *Id.* at ¶ 9-10. Defendant was cited for OVI, failure to stop at a red light, passing on the right, resisting arrest, and aggravated menacing. *Id.* at ¶ 10. The defendant filed a Motion to Suppress on the basis of many issues, including warrantless entry into his garage. *Id.* at ¶ 12. The trial court found the officer was permitted to issue the traffic citations as he was in "hot pursuit" of the defendant when he entered the defendant's garage. The Seventh District Court of Appeals upheld the trial court's decision. On the issue of the

warrantless entry into defendant's garage, the Seventh District ruled that "Since the attempt to arrest was set in motion while appellant was outside in public view, the pursuit into his garage was lawful, regardless of whether the garage is considered curtilage." *Id.* at ¶ 40.

{¶ 26} Appellant argues that the trial court erred when it applied the "hot pursuit" exception to Deputy Rhodes' warrantless intrusion into his garage. He argues that the trial court's decision was based upon a mistaken finding of fact. Furthermore, appellant contends no "hot pursuit" occurred as he merely got out of his car and walked to his garage. Therefore, according to appellant, the State failed to establish any exceptions to the warrant requirement.

{¶ 27} Our standard of review dictates an appellate court must accept the trial court's findings of fact, if supported by some competent evidence. In its decision denying appellant's Motion to Suppress, the trial court states: "9. In contrast, the officer testified he had pulled into the driveway behind Defendant's truck with emergency lights activated all before Defendant crossed into his garage." The trial court refers to the officer's emergency lights numerous times in its findings of fact. The evidence does not support the finding of fact that Deputy Rhodes activated his emergency lights. The transcript of the hearing on the Motion to Suppress reads: "Q. [Defendant's Counsel]. And you never activated your lights or sirens or anything like that, correct? A. [Officer Rhodes] No, I did not." Since no competent evidence supports the finding that Officer Rhodes activated his emergency lights or sirens, we do not accept the trial court's assertion of that fact.

{¶ 28}  Under the Ohio Supreme Court's ruling in *Flinchum*, three things must be established for the "hot pursuit" exception to apply:  (1) the officers must have identified themselves; (2) the officers must be in hot pursuit; and (3) the suspect needs to have fled into a house to avoid arrest.  95 Ohio St.3d at 43.

{¶ 29}  With respect to the first requirement, the record does not establish that Deputy Rhodes identified himself as a police officer.  Deputy Rhodes never activated his emergency lights.  Deputy Rhodes gave testimony only to the fact that he ordered appellant to stop.  Deputy Rhodes claims that he ordered the appellant to stop before he entered the garage.  Appellant claims that he was already in the garage when he heard the officer ask him to stop.

{¶ 30}  The trial court stated, in its findings of fact: "11.  The court does not find the Defendant's testimony credible that he did not notice the cruiser or its emergency lights behind him in his driveway in the complete darkness at midnight or one o'clock in the morning."  As mentioned previously, the emergency lights on Deputy Rhodes's cruiser were not activated.  Given that the trial court discounted the appellant's testimony based upon the aforementioned mistaken finding of fact, it is unclear when the deputy actually ordered appellant to stop.

{¶ 31}  The facts here differ from those in *Lake*, wherein the defendant had previous dealings with the officer in the *Lake* case.  The officer had ordered the defendant to stop several times and called him by name.  In *Lake,* the defendant had actually driven around the vehicle in which the officer and the Chief were riding as the defendant yelled something indiscernible. Determining if Deputy Rhodes actually identified himself requires the factfinder to find either appellant or Deputy Rhodes more credible than the

other.  Here, the trial court found appellant less credible in part because the mistaken fact that it was unreasonable for appellant to not notice the officer's activated lights.

{¶ 32}  We now turn to the second requirement that the officers must be in hot pursuit of a defendant.  On direct examination, Deputy Rhodes offered this testimony:

Q. [Prosecutor] When you pulled up into the driveway, did the Defendant remain in his vehicle?

A. [Lt. Rhodes] He was actually closing the door to his vehicle as I was pulling in and getting out.

Q. [Prosecutor] So was he exiting the vehicle and closing it?

A. [Lt. Rhodes] Yes.

Q. [Prosecutor] Okay.  And where did he go?

A. [Lt. Rhodes] To the garage.  That direction.

Q. [Prosecutor] Did you command the Defendant to stop?

A. Yes.

Q. [Prosecutor] And did the Defendant stop?

A. No.

Q. Did you pursue the Defendant on foot?

A. Uh-hum.  Well, it wasn't a pursuit, but yeah, I went towards him.

After Deputy Rhodes was provided a leading question by the State of Ohio, he clarified his answer that "it wasn't a pursuit" by answering as follows:

Q. Okay.  You stated the Defendant did not run from you but did he pick up his pace after acknowledging your presence?

A. Yes, ma'am.

{¶ 33} In contrast to the facts in *Flinchum,* where the defendant avoided police on two separate occasions and ran into his house, it is questionable whether the facts here demonstrate a "hot pursuit." At no time did Deputy Rhodes activate his cruiser's lights or sirens, definitively alerting appellant of police presence. The trial court even describes the encounter as "lukewarm amble," rather than a hot pursuit. Accordingly, it is uncertain whether a "hot pursuit" actually took place here.

{¶ 34} As for the third requirement, it is also questionable whether the appellant "fled into a house to avoid arrest." No evidence was presented that the appellant ran into his garage. Deputy Rhodes even testified that appellant did not run from him and that "it wasn't a pursuit."

{¶ 35} The State possesses the burden to demonstrate that the facts in this case should meet an exception to the Fourth Amendment's prohibition of warrantless entry to a home. The trial court in this case recognized in its findings of fact that this was a "lukewarm amble" just as Justice Pfeifer's dissent referenced the set of facts in *Flinchum.* Therefore, this Court reiterates the statements of Justice Pfeiffer:

We are dealing in this case with a fundamental part of a

fundamental right. "It is axiomatic that the 'physical entry of the home is

the chief evil against which the wording of the Fourth Amendment is

directed.' " *Welsh v. Wisconsin* (1984), 466 U.S. 740, 748, 104 S.Ct. 2091,

80 L.Ed.2d 732, quoting *United States v. United States Dist. Court for the*

*E. Dist. of Michigan* (1972), 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d

752. It is nearly as axiomatic that "the Court has recognized, as 'a "basic

principle of Fourth Amendment law[,]" that searches and seizures inside a

home without a warrant are presumptively unreasonable.' " *Id.* at 749, 104 S.Ct. 2091, 80 L.Ed.2d 732, quoting *Payton v. New York* (1980), 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639. The *Welsh* court recognized exceptions for exigent circumstances, but emphasized that "exceptions to the warrant requirement are 'few in number and carefully delineated' * * * and that police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." 466 U.S. at 749–750, 104 S.Ct. 2091, 80 L.Ed.2d 732, quoting *United States v. United States Dist. Court, supra,* 407 U.S. at 318, 92 S.Ct. 2125, 32 L.Ed.2d 752. In *Welsh* the court was quick to point out that the exception carved out by *Santana* concerns "hot pursuit of a fleeing *felon.*" (Emphasis added.) *Id.* at 750, 104 S.Ct. 2091, 80 L.Ed.2d 732.

The gravity of tinkering with the protections of the Fourth Amendment is appreciated by the Supreme Court, and that court emphasizes that the circumstances of a particular situation must be grave enough to merit a lifting of those protections: "Our hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor. * * * When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate." (Footnote

omitted.) *Id.* at 750, 104 S.Ct. 2091, 80 L.Ed.2d 732.

*Id.* at 46-47 (Pfeiffer, J., dissenting).

{¶ 36}  This Court is unable to accept the trial court's finding of fact as true that the officer's emergency lights were activated.  Our standard of review dictates that we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case. *Jones, supra at* ¶ 6.  This Court is unable to determine that the trial court reached the correct legal conclusion since a key fact in the case was analyzed incorrectly.

{¶ 37}  This is a close case.  Because of the importance of the Fourth Amendment Rights of our citizens to be free from unreasonable searches and seizures, we remand this case for the trial court to reevaluate the evidence in light of the mistaken finding of fact. We are reluctant to find that one mistake of fact taints all other facts and disregard the decision of the trial court. However, in this case, it is disconcerting that the trial court had discredited the balance of the appellant's testimony as a result of the mistaken finding of fact. A remand in this case would allow the trial court to evaluate the testimony of the parties without the mistake of fact. A remand would also allow the trial court to take additional evidence and/or conduct a new hearing.

### III.

### Conclusion

{¶ 38}  Appellant's sole assignment of error is sustained.  The judgment of the Marietta Municipal Court is reversed and the cause is remanded for further proceedings consistent with this opinion.

                              JUDGMENT REVERSED AND CAUSE REMANDED.

JUDGMENT ENTRY

It is ordered that the trial court's JUDGMENT BE REVERSED and REMANDED for proceedings consistent with this decision. Appellee shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J.: Concurs in Judgment and Opinion.
McFarland, J.: Dissents.

For the Court

By:                           
        Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.