**The STATE of Ohio, Appellee,**

v.

**SLADECK, Appellant.**

[Cite as *State v. Sladeck* (1998), 132 Ohio App.3d 86.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–980144 and C–980146.

Decided Dec. 31, 1998.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Willliam E. Breyer,* Assistant Prosecuting Attorney, for appellee.

*John J. Helbling,* for appellant.

SUNDERMANN, Presiding Judge.

Defendant-appellant, George Sladeck, was indicted for one count of possession of an illegal substance in one case and charged with possession of illegal drug paraphernalia in a companion case. On December 9, 1997, Sladeck filed a motion to suppress all evidence seized from his home. A hearing on the motion to suppress was held on that same day. On January 20, 1998, Sladeck's motion to suppress was denied, and, after pleading no contest, Sladeck was found guilty as he stood charged.

Sladeck timely appeals the judgments entered in the two cases, and his appeals have been consolidated. Sladeck asserts one assignment of error that is not well taken.[1]

At the suppression hearing, Officer Erickson testified that, on August 22, 1997, he was dispatched to Sladeck's home after receiving a phone call that there was a burglary in progress with someone possibly still in the home. Officer Erickson testified that the witness who called about the burglary stated that he observed two juveniles kick in Sladeck's basement window and was unsure whether the suspects were still in the house. Pursuant to standard procedure, a K–9 unit was called to search the interior of the house for suspects. While waiting for the unit, Officer Erickson testified that he observed a broken basement window and saw that a shelf inside the window had been knocked down.

Once Officer Bise and a trained police dog arrived, they entered the house through an unlocked door. In the ensuing search for suspects, the dog exhibited

---

1. This case has *sua sponte* been removed from the accelerated calendar.

an alert reaction to the presence of a locker and vanity. The officer opened both the locker and the vanity and discovered illegal drugs. According to his testimony, he did not confiscate the drugs at that time, but instead left the house after finding no suspects there.

Subsequently, Sergeant Hetzel was called to the scene. Before he arrived, Sladeck appeared at the house. The officers testified that they informed Sladeck about the burglary call and that they had found drugs in the house after searching for suspects. The officers asked Sladeck to wait there for Sergeant Hetzel, and Officer Erickson testified that he read Sladeck his *Miranda* rights. Once Sergeant Hetzel arrived, he separately advised Sladeck of his rights and asked for permission to search the house. Sladeck signed a consent form, and officers reentered his home to recover various illegal drugs and a scale. Officer Erickson testified that Sladeck admitted that the drugs were his, and an official laboratory report confirmed that the drugs had been identified, through testing, as marijuana.

In his sole assignment of error, Sladeck contends that the trial court erred in denying his motion to suppress all the evidence seized from his home because the seizure had resulted from an illegal warrantless search. Specifically, he alleges that when the officers initially searched his house, they violated his rights under both the Fourth and Fourteenth Amendments to the United States Constitution, and Sections 10, 14, and 16, Article I of the Ohio Constitution, because there was no independent source for the evidence, no attenuation or break in the time between the police violations and the finding of the evidence, and no indication that the evidence would have inevitably been discovered through other lawful means. We find this argument unpersuasive.

The Fourth Amendment, as made applicable to the states by the Fourteenth Amendment, secures the right of individuals to be free from unreasonable searches and seizures. A warrantless seizure is *per se* unreasonable unless it falls within one of the recognized exceptions to the warrant requirement.[2] One such exception is the exigent-circumstances exception. This exception applies when there is a reasonable basis for the police to believe that entry into a structure is necessary to protect or preserve life, or to avoid serious injury.[3]

---

2. *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585.

3. *Mincey v. Arizona* (1978), 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 299–300. Accord *State v. Applegate* (1994), 68 Ohio St.3d 348, 350, 626 N.E.2d 942, 944.

Numerous federal and state courts,[4] including Ohio courts,[5] have also recognized that a police officer may lawfully enter a structure, such as a private home, to protect the property of the owner or occupant, when, for example, the police reasonably believe that the premises have been or are being burglarized.

The key to any Fourth Amendment analysis is reasonableness.[6] After reviewing the facts known to the police officers in this case, we hold that the trial court did not err in overruling Sladeck's motion to suppress. The officers were dispatched to Sladeck's home because of a burglary call from a neighbor who saw two juveniles attempt to break into the home. Upon arriving at Sladeck's home, the officers noticed a broken windowpane. Because the officers thought that suspects might still be in the house, they called a K–9 unit pursuant to their normal procedure in a burglary case. Based upon the officers' reasonable belief that a burglary was in progress, we conclude that it was reasonable for the officers to believe that any number of crimes might have occurred after the illegal entry. Accordingly, we conclude that the situation involved urgent circumstances, where the personal safety of the officers surrounding the house and the protection of property or residents potentially inside the home were interests sufficient to justify an entry under the United States and Ohio Constitutions.

Sladeck also contends that after the police conducted the illegal search, the officers, in an attempt to correct their illegal activity, improperly coerced Sladeck into consenting to another search of his house. We disagree. There is no evidence in the record suggesting that Sladeck was threatened or that his consent was improper. Accordingly, we conclude that the trial court did not err in denying Sladeck's motion to suppress evidence seized from his house during a legal search.

Therefore, the judgments of the trial court are affirmed.

*Judgments affirmed.*

SHANNON, J., concurs.

GORMAN, J., dissents.

---

4. See, *e.g., Reardon v. Wroan* (C.A.7, 1987), 811 F.2d 1025, 1029; *United States v. Estese* (C.A.6, 1973), 479 F.2d 1273; *Bryant v. State* (Ind.1995), 660 N.E.2d 290, 301, certiorari denied (1996), 519 U.S. 926, 117 S.Ct. 293, 136 L.Ed.2d 213; *People v. Duncan* (1986), 42 Cal.3d 91, 98–99, 720 P.2d 2, 227 Cal.Rptr. 654; *State v. Haines* (Fla.App.1989), 543 So.2d 1278. See, also, Lafave, Search and Seizure (1996) 403–407, Section 6.6(b); Annotation, Belief That Burglary is in Progress or Has Recently Been Committed as Exigent Circumstance Justifying Warrantless Search of Premises (1998), 64 A.L.R.5th 637.

5. See, *e.g., State v. Overholser* (July 25, 1997), Clark App. No. 96–CA–0073, unreported, 1997 WL 451473; *State v. Canty* (Aug. 22, 1990), Lorain App. No. 90CA004775, unreported, 1990 WL 121109; *State v. Durbin* (July 11, 1988), Butler App. No. 87–12–167, unreported, 1988 WL 72460.

6. *Katz v. United States, supra.*

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.

GORMAN, Judge, dissenting.

The irony of this case is that Sladeck was convicted of a fourth-degree misdemeanor and fifth-degree felony as the result of a warrantless search of his home by police dispatched to capture burglars, who were never apprehended.

The majority acknowledges that the exigent-circumstances exception is a "specifically established and well-delineated exceptio[n]" to the warrant requirement. *Katz v. United States.* It permits a warrantless arrest for a felony in a home if both probable cause to arrest and exigent circumstances exist. *Payton v. New York* (1980), 445 U.S. 573, 583–590, 100 S.Ct. 1371, 1378–1382, 63 L.Ed.2d 639, 648–653; *State v. Jenkins* (1995), 104 Ohio App.3d 265, 268, 661 N.E.2d 806, 808.

What the majority fails to emphasize is that an exigent circumstance is an emergency that prompts police to believe there is reasonable cause to enter a home without a warrant when a person in the home is in need of immediate aid or to prevent a situation threatening life or limb, or the immediate loss, removal, or destruction of evidence or contraband. *Mincey v. Arizona* (1978), 437 U.S. 385, 392–393, 98 S.Ct. 2408, 2413–2414, 57 L.Ed.2d 290, 299–301; *Minnesota v. Olson* (1990), 495 U.S. 91, 101, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85, 96. A search to obtain evidence, however, is not an exigent circumstance, as a "warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation.'" *State v. Applegate* (1994), 68 Ohio St.3d 348, 350, 626 N.E.2d 942, 944, quoting *Terry v. Ohio* (1968), 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889, 908–909; see Anderson's Ohio Criminal Practice and Procedure (3 Ed.1997) 524, Section 54.702.

Here, the constitutional safeguard is significant because of the government's intrusion into a home. The state has the burden of establishing, by the totality of the circumstances, the exigency that supports a warrantless entry and search of a home. *Welsh v. Wisconsin* (1984), 466 U.S. 740, 750, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732, 743–744, citing *Payton v. New York*, 445 U.S. at 586, 100 S.Ct. at 1380, 63 L.Ed.2d at 650–651. In this case, I find that the state utterly failed to meet its burden to prove that an emergency existed when police entered Sladeck's single-floor ranch house. When police responded, they met the neighbor who had reported the burglary. He informed the officers that he had seen two juveniles attempting to break in through the back door and a basement window. He told them that Sladeck was not at home and that he did not know if the juveniles were inside. At this time, the five or six officers surrounded the home. They then called for the K–9 unit, which responded with a dog trained to

locate human suspects and to search for drugs. They did not, however, make an effort to obtain a search warrant.

While they waited for the K–9 unit to arrive, police saw that a pane of glass in a basement window was partially pushed out. But they saw no movement or evidence to indicate that anyone was actually inside. When the dog arrived, it located a track away from the house, but the officers testified that they still believed that someone might be inside. After entering Sladeck's residence to determine if the juveniles were present, the dog detected the presence of contraband, which police discovered by opening a footlocker and a vanity. Ultimately, Sladeck returned home, and after obtaining his consent, the police reentered and seized marijuana and drug paraphernalia.

These facts fail to establish either that an emergency existed when the officers entered Sladeck's residence, or that, once inside, the officers found contraband in plain view. Although the response by police to the report of a burglary in progress triggered an emergency situation, the absence of any potential for injury to occupants was evident when they became aware that only the burglars could be inside. Except for the time that the officers arrived, the transcript does not specify relevant times or identify the potential concerns, apprehensions, or fears of the police for their own immediate safety. While aggravated burglary is an "offense of violence" as defined in R.C. 2901.01(A)(9)(a), the record is silent as to whether the officers believed or received information that any suspect might be armed. Accordingly, the evidence offered at the hearing on the motion to suppress does not satisfy any of the four exigent-circumstances criteria recognized in *Minnesota v. Olson.*

The balancing of interests required by law is fact specific and must be undertaken on a case-by-case basis. We expect police to respond to emergency situations, but "the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests," and the United States Supreme Court "has recognized only a few such emergency conditions." *Welsh v. Wisconsin,* 466 U.S. at 749–750, 104 S.Ct. at 2097–2098, 80 L.Ed.2d at 743. Because the state failed to establish the existence of an emergency that would have allowed police to enter Sladeck's home without a warrant, his subsequent consent was, likewise, invalid under the "fruit of the poisonous tree" doctrine. *State v. Carter* (1994), 69 Ohio St.3d 57, 67, 630 N.E.2d 355, 363. The marijuana and drug paraphernalia seized by police should have been suppressed.