JOURNAL ENTRY AND OPINION
{¶ 1} In two separate cases, defendants-appellants, Frank Robinson ("Robinson") and Alvin Jackson ("Jackson"), appeal their convictions, arguing the Cuyahoga County Court of Common Pleas erred when it denied their motion to suppress and return seized property. See State of Ohio v. Alvin Jackson (Aug. 26, 2004), Cuyahoga App. No. 83420. Finding error in the proceeding below, we reverse and remand
 {¶ 2} The following facts give rise to this appeal. Robinson and Jackson were indicted for trafficking in marijuana in an amount exceeding twenty kilograms with a schoolyard specification, possession of marijuana in excess of twenty kilograms, and possession of criminal tools. At their arraignment, both pled not guilty and subsequently agreed to joint representation by the same defense counsel. A motion to suppress was filed.
 {¶ 3} At the suppression hearing, Lieutenant David Strasshofer ("Lt. Strasshofer"), from the City of Lyndhurst Police Department, testified that on January 15, 2003, a resident on Learidge Road called regarding an incident that occurred the previous day involving an intoxicated person found passed-out on the sidewalk near his house. During the conversation, the caller also expressed his concerns about the house next door, at 956 Learidge, because he had seen people "coming and going at odd hours, particularly at 4:00 a.m." He stated that the house had been vacant for over a year and volunteered to retrieve license plate numbers of the cars coming and going. Lt. Strasshofer declined the offer but told the caller he would check into it and put out a "special attention" memo for the following shifts.
 {¶ 4} That same day, Lt. Strasshofer drove out to the house and observed that there were tire tracks in the snow that covered the driveway. He also stated that it appeared a car had been parked in the driveway at some point because there was a bare spot without snow. He further noted that the house appeared "closed up." Lt. Strasshofer wrote a special attention memo regarding 956 Learidge and included the caller's observations as well as his own.
 {¶ 5} Lt. Strasshofer testified that a "special attention" memo is generated whenever a citizen calls with concerns within the city of Lyndhurst. These memos are placed in a book that is reviewed by officers on each shift. Shift officers pay special attention to the location the memo indicates when they are patrolling their area. In this case, Lt. Strasshofer took the call and generated the memo.
 {¶ 6} On cross-examination, Lt. Strasshofer acknowledged that he obtained the name of the homeowner and his phone number; however, he could not recall ever speaking with him. In addition, he did not attempt to knock on the door, contact the utility companies, or speak with the neighbors. He was not on duty or present when the officers entered the house on the evening of January 15, 2003.
 {¶ 7} Officer Robert Colombo ("Officer Colombo") testified that he began his shift at 11:00 p.m. on January 15, 2003. While patrolling the area, Officer Colombo drove by 956 Learidge in accordance with the special attention memo and police policy. He noticed there were "some fairly fresh tire tracks in the driveway" and that there were lights on inside. Officer Colombo called for backup so he could check the house because the memo indicated it was vacant. After assistance arrived, Officer Colombo and Officer Kessler checked the house and walked around to the back. The front door was locked and there were no broken windows.
 {¶ 8} At the sliding glass door in the back of the house, Officer Colombo shined his flashlight through some of the broken blinds and saw that the room was empty — there was no furniture. He checked the sliding glass door and it slid open. Thinking that kids were using the house to "party," he informed dispatch that they had an open door and were going inside because the house was not secure.
 {¶ 9} Upon entry, Officer Colombo noted a very strong odor of marijuana. Then Officer Colombo and Officer Kessler searched the house looking for people while Officer Romano stayed in the kitchen. No persons were found; however, a large TV, a stereo, and a couch were located in the living room. In addition, over twenty kilograms, approximately 290 pounds, of marijuana was located throughout the house and in the garage attic.
 {¶ 10} As a result of their discovery, the officers staked out the house waiting to see if anyone would return. Eventually, Jackson and Robinson returned and were arrested. Subsequently, the police obtained a search warrant and confiscated the marijuana.
 {¶ 11} During cross-examination, Officer Colombo testified that he did not hear any noises coming from the house and that he did not know what was inside the house. He stated that he planned to enter the house "for security reasons, for safety reasons, to make sure that the property was intact." Officer Colombo stated that if he had not found an open door he would not have entered the residence, but rather he would have kept an eye on the house.
 {¶ 12} The police ultimately learned that the house was not vacant and that the owner rented it to someone who sublet it to Robinson without permission.
 {¶ 13} The trial court denied Robinson and Jackson's motion to suppress, stating: "I believe there are certain exigent circumstances that exist and that exception should apply in this case. I believe that the officer and the police had a reasonable basis to enter into the structure which was necessary to protect and preserve lives and to avoid serious injury based upon the special attention memo that was sent out. I believe how the police handled the circumstances was proper and the evidence will not be suppressed."
 {¶ 14} The case proceeded to trial, whereupon the jury found both defendants guilty of all three counts. The trial court sentenced each defendant to the mandatory sentence of ten years on the trafficking count, five years on the possession count, and imposed ten months for the possession of criminal tools, all sentences running concurrently. All property listed in the indictment was ordered forfeited.
 {¶ 15} Jackson and Robinson appeal separately, each raising three assignments of error. Only the first assignment of error for each case will be addressed because it is dispositive.
 {¶ 16} "I. The court erred when it denied the defendant's motion to suppress and for the return of illegally seized property."
 {¶ 17} In a motion to suppress, the trial court assumes the role of the trier of fact and is in the best position to resolve questions of fact and evaluate the witnesses' credibility. Statev. Clay (1973), 34 Ohio St.2d 250. A reviewing court is bound to accept the trial court's findings of fact if supported by competent, credible evidence. State v. Schiebel (1990),55 Ohio St.3d 71. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard.State v. Fellows (May 22, 1997), Cuyahoga App. No. 70900.
 {¶ 18} The Fourth Amendment protects a citizen's right to be free from all unreasonable searches. Warrantless searches of residences are considered "per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katz v. United States (1967),389 U.S. 347, 357. The Supreme Court of Ohio stated, "Where there is no search warrant, the burden falls on the state to show that a search comes within one of the judicially recognized exceptions: (a) a search incident to a lawful arrest; (b) consent signifying waiver of constitutional rights; (c) the stop-and-frisk doctrine; (d) hot pursuit; (e) probable cause to search, and the presence of exigent circumstances; or (f) the plain-view doctrine." Statev. Akron Airport Post 8975 (1985), 19 Ohio St.3d 49, at syllabus.
 {¶ 19} Under certain emergency or exigent circumstances, law enforcement officers are not required to obtain a warrant before entering a private residence. For example, the Fourth Amendment does not prohibit police officers from making warrantless entries into a home when the officers reasonably believe a person in the home is in immediate need of aid; likewise, the need to protect or preserve life or to avoid serious injury is justification for an officer to enter a home for what would otherwise be illegal absent the exigency. Mincey v. Arizona (1978), 437 U.S. 385,392. "Several federal and state courts have also recognized that a warrantless entry into a home is permissible to protect the property of the owner or occupant such as when the police reasonably believe that the premises has been or is being burglarized." State v. Durbin (July 11, 1988), Butler App. No. CA87-12-167.
 {¶ 20} Here, the state argues that this particular exigency was a reasonably perceived "emergency" requiring immediate entry due to the protective functions of the police as opposed to, or in addition to, their law enforcement functions. The state cites numerous cases that allow for the immediate entry into a residence without a warrant when the home is being burglarized or has been burglarized. See State v. Sladeck (1998),132 Ohio App.3d 86 (police entered home after call from a neighbor who saw two juveniles kick in the window but was unsure whether suspects were still inside); State v. Overholser (July 25, 1997), Clark App. No. 96-CA-0073 (police entered home after call from alarm company that alarm had signaled); State v. Canty (Aug. 22, 1990), Lorain App. No. 90CA004775 (police entered home after call from neighbor who saw broken basement window, back gate open, and no response at door); State v. Durbin (July 11, 1988), Butler App. No. 87-12-167 (police entered home after anonymous call that someone with a flashlight was behind a house where no one was home; police saw back door to basement ajar and doorknob on ground); United States v. Estese (1973), 479 F.2d 1273 (police responded to radio assignment of breaking and entering and entered after finding apartment door wide open with pry marks).
 {¶ 21} A determination of exigency sufficient to justify warrantless entry must be made on a case-by-case basis. Mincey,437 U.S. at 392. The appropriate inquiry is whether, based on the totality of the circumstances, it was reasonable for the officer to believe that an exigent or emergency situation existed. Statev. Applegate (1994), 68 Ohio St.3d 348. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis. * * * The Fourth Amendment's concern with `reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent." Whren v. UnitedStates (1996), 517 U.S. 806, 813-814. Therefore, this court must determine whether exigent circumstances existed in this case, and whether the officers' actions in entering the home were reasonable.
 {¶ 22} Here, the facts reveal that this was not an emergency called in by a neighbor requesting immediate assistance. The police were merely looking into things and observed a supposedly vacant house with the lights on and recent vehicular traffic. Notably, however, there were no noises coming from within the house; upon first glance, the house appeared empty although the back sliding glass door was unlocked. At this point in time, there was no viable evidence that there was an emergency situation that required immediate entry. The mere fact that a house was not locked does not in and of itself create an emergency situation requiring immediate entry into someone's home. Although Officer Colombo believed the house to be vacant and he thought there may be teenagers inside "partying," other than the lights being on, no other fact supports the officer's suspicion that there was an immediate threat of harm to the property. Even if the house had been illegally occupied by teenagers "partying," none of this officer's observations support that someone was inside the house at that time. The officer testified that he did not hear any noises coming from the house and when looking through the sliding glass door did not see anything. There was no immediate danger that the house would be damaged or that immediate entry would prevent damage. A warrant should have been obtained before entering this home.
 {¶ 23} The first assignment of error is sustained.
Reversed and remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee costs herein.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Cooney, J., Concur.