[Cite as *State v. Head*, 2017-Ohio-7473.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| JAY EVERETT HEAD | : | Case No. 2017CA00051 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:               Appeal from the Stark County Court
                                       of Common Pleas, Case No.
                                       2016CR0952




JUDGMENT:                              Affirmed




DATE OF JUDGMENT:                      September 6, 2017




APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

JOHN D. FERRERO                        KRISTINA R. POWERS
Prosecuting Attorney                   Stark County Public Defender's Office
                                       201 Cleveland Ave. S.W., Suite 104
By: RONALD MARK CALDWELL               Canton, Ohio  44702
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza South – Suite 510
Canton, Ohio 44702-1413

*Baldwin, J.*

{¶1} Defendant-appellant Jay Everett Head appeals the denial by the Stark County Court of Common Pleas of his Motion to Suppress. Plaintiff-appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND CASE

{¶2} On June 30, 2016, the Stark County Grand Jury indicted appellant on one count of illegal manufacture of drugs in violation of R.C. 2925.04(A)(C)(3), a felony of the second degree, and one count of illegal assembly or possession of chemicals for the manufacture of drugs in violation of R.C. 2925.041 (A), a felony of the third degree. At his arraignment on August 19, 2016, appellant entered a plea of not guilty to the charges.

{¶3} Appellant, on September 7, 2016, filed a Motion to Suppress, seeking to suppress any evidence found as a result of the alleged illegal search of his home. A hearing on the motion was held on October 13, 2016.

{¶4} At the hearing, Officer Brian Duman of the Uniontown Police Department testified that he was in uniform in a cruiser on May 15, 2016 at approximately 3:30 a.m. when he received a call that sent him to 2488 Edison Street Northwest in Uniontown. The Police Department had received a call from a couple of neighbors saying that they had observed multiple subjects with flashlights inside the home, which they indicated was vacant because the current owner was deceased. Chief Britt, who arrived at the house seconds after the call, arrived at the house about a minute before Officer Duman. They also called for an additional unit from Hartville.

{¶5} Officer Duman testified that when he arrived, Chief Britt was attempting to get appellant, who appeared in the kitchen window, to leave the house. He testified that

appellant walked outside through a side door and was detained until the Hartville unit arrived. During such time, appellant was asked if anyone else was in the house and told the officers that there might be. According to Officer Duman, Chief Britt and an officer from the Hartville Police Department then went inside to do a protective sweep in an attempt to locate additional subjects in the house. Appellant told Officer Duman that someone might be in the attic and the attic was checked and found to be empty. While checking the basement, both officers identified a possible methamphetamine laboratory that was either functioning or in the process of being fully assembled. The house had electricity and at least partially functioning plumbing. No other individuals were located inside the house.

{¶6}    When asked if appellant had told any of the officers that they could not go inside the house to look for the additional suspects, Officer Duman indicated that appellant had not. He testified that because the house was in such poor condition, it would have been very difficult to determine if there was any forced entry. He did not recall appellant having a key to the house on him. The following testimony was adduced when Officer Duman was asked if there was any indication that the house was appellant's house:

{¶7}    A:  He had the address for that home on his driver's license; however, he hadn't occupied it in several years as far as I'm aware.  I had never seen him at that home personally.  I was aware of the fact that the owner of the home had passed away and that there was some sort of civil proceeding involving the state of that home, but I didn't know anything further at the time.  It just was a vacant home as far as I was concerned in my normal patrol duties.

**{¶8}** Q:  Explain to me what you mean by that.

**{¶9}** A:  The owner of the home had passed away, the bills for his burial had gone unpaid.  There was an attorney that was involved and there was some sort of lien or something placed upon the home.  All I knew was it was, like I said, a vacant house that is located on Edison Street.

**{¶10}** Transcript at 14-15.  Officer Duman further testified that he passed the house multiple times during his normal patrol route and had not seen activity at the house or lights on while patrolling during his shift from 10:00 p.m. to 6:00 a.m. According to him, the grass was knee high and the house was in a serious state of disrepair.

**{¶11}** On cross-examination, Officer Duman testified that the homeowner who had passed away was appellant's father. He testified that prior to the night in question, he had not had contact with appellant or been to the specific address.  Officer Duman admitted that the address on the identification card that appellant produced that night was the same address on Edison Street Northwest and that appellant told him that he was entitled to the house.  He further testified that appellant never told him that he did not want the house to be searched.  Officer Duman, when questioned about  why the witness statements indicated that flashlights were seen outside the house while, in his report, he stated that they were inside the house, testified that he wrote his report from the information that he had received from dispatch and  that there could have been a miscommunication. According to Officer Duman, the report was written before the written statements were obtained.  He further testified that when he walked into the house with Chief Britt, there was a strong ammonia odor similar to cat urine and that this was indicative of a methamphetamine laboratory.

{¶12} At the hearing, appellant testified that he had resided at the house off and on since 1998 and that he had listed 2488 Edison Street Northwest in Uniontown on his state issued ID card. He further testified that he was listed as an heir or beneficiary of his father's estate. According to appellant, there was a transfer on death deed that transferred the house to him upon his father's death. Appellant later produced documentation that he was the heir to his father's estate and that the house was part of the estate.

{¶13} Appellant testified that he was at the house at 3:20 a.m. to redo the hardwood floors and clean the house and that he had entered through the front door. He testified that after he exited the house, he was asked if he had seen anyone with flashlights outside the house and said that he had not. Appellant stated that he told the officers that he was allowed to be at the house and that there was no one else in the house. Appellant, when asked if he had given the officers permission to search the home, testified that he told them "No". He further testified that, when asked if he had seen any people with flashlights, he responded that he had not.

{¶14} On cross-examination, appellant admitted that he had told the officers that he possibly heard something upstairs, but  later saw "a" "the antenna" and coax cable clacking against the side of the house,… and I said that's what I heard." Transcript at 43. He denied telling the officers that there might be people in the house.  Appellant alleged that the police had changed their written report after obtaining witness statements with respect to whether the flashlights were seen inside or outside of the house. He indicated that he believed that the officers were making stuff up to get him.

{¶15} As memorialized in a Judgment Entry filed on November 15, 2016, the trial court overruled appellant's Motion to Suppress. Thereafter, on February 15, 2017,

appellant withdrew his former not guilty plea and entered a plea of no contest to both charges.  Pursuant to a Judgment Entry filed on March 20, 2017, appellant was placed on   community control for a period of three years.

{¶16}  Appellant now raises the following assignment of error on appeal:

{¶17}  THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE.

I

{¶18}  Appellant, in his sole assignment of error, argues that the trial court erred in overruling his Motion to Suppress. We disagree.

{¶19}  There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726 (4th Dist.1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (4th Dist.1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the

facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (8th Dist.1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (4th Dist.1993); *Guysinger.* As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶20} Appellant, in the case sub judice, argues that the evidence was obtained as a result of the illegal warrantless search of the house and should have been suppressed. The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution enunciate the right of persons to be free from unreasonable searches and seizures. However, exigent circumstances may justify warrantless entries upon property. *State v. Applegate*, 68 Ohio St.3d 348, 1994-Ohio-356, 626 N.E.2d 942, syllabus. The "emergency aid" doctrine is a narrow type of exigent circumstance which allows the police "to enter a dwelling without a warrant and without probable cause when they reasonably believe, based on specific and articulable facts, that a person within the dwelling is in need of immediate aid." *State v. Gooden,* 9th Dist. Summit No. 23764, 2008–Ohio–178, at ¶ 6. Under this exception, Ohio courts have recognized that a police officer may lawfully enter a structure to protect the property of the owner or occupant when the police reasonably believe that the premises have been or are being burglarized. *State v. Sladeck,* 132 Ohio App.3d 86, 89, 724 N.E.2d 488 (1st Dist.1998). As noted by the court in *State v. Wilson,* 12th Dist. Clinton No. CA2006-03-008, 2007-Ohio-353 at paragraph 24, "[w]hen police reasonably believe that a burglary is in progress, an immediate warrantless entry undertaken to investigate and protect the property and to assist any

victims inside has been upheld by the courts as a reasonable search. *State v. Overholser* (July 25, 1997), Clark App. No. 96–CA–0073."

**{¶21}** In the case sub judice, there was testimony that the Uniontown Police Department had received a call that neighbors had observed multiple suspects with flashlights inside of the house. There was testimony that they told the officers that the home was vacant, the owner deceased and that no one was supposed to be there. Officer Duman testified that he had not observed any activity at the house during his normal routine patrols and that the house was in serious disrepair, making it difficult to determine if there was any forced entry, and the grass was knee high. According to Officer Duman, when the officers spoke with appellant, he indicated that there might be other individuals in the house. While appellant disputes this, the trial court, as trier of fact, was in the best position to assess credibility.

**{¶22}** Based on the foregoing, we agree with the trial court that, based upon the totality of circumstances, the officers "had reason to believe [at the time of the search] that a burglary was occurring at the residence and, therefore, an immediate warrantless entry into the residence was permissible to investigate and protect the residence." On such basis, we find that the trial court did not err in overruling appellant's Motion to Suppress.

**{¶23}** Appellant's sole assignment of error is, therefore, overruled.

{¶24} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

Delaney, P.J. and

Hoffman, J. concur.