[Cite as *State v. Haputa*, 2020-Ohio-6925.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | Case No. 20-COA-016 |
| WILLIAM HAPUTA | |
| Defendant-Appellant | O P I N IO N |

CHARACTER OF PROCEEDINGS:    Appeal from the Ashland Municipal Court, Case No. 19CRB00960

JUDGMENT:    Reversed and Remanded

DATE OF JUDGMENT ENTRY:    December 28, 2020

APPEARANCES:

For Plaintiff-Appellee

ANDREW N. BUSH
Assistant Director of Law
1213 E. Main Street
Ashland, Ohio 44805

For Defendant-Appellant

JOSEPH P. KEARNS, JR
Mason, Mason & Kearns
153 West Main Street, PO Box 345
Ashland, Ohio 44805

*Hoffman, P.J.*

**{¶1}** Defendant-appellant William Haputa appeals the judgment entered by the Ashland Municipal Court convicting him of possession of drug paraphernalia (Ashland Ord. 513.121) and possession of marijuana (Ashland Ord. 513.03(C)(2)) following his pleas of no contest and sentencing him to 30 days in jail with 20 days suspended. Appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** On June 28, 2019 at 1:37 a.m., Lt. James Shreffler of the Ashland Police Department was on patrol in the city of Ashland. He noticed the lights were on at a cell phone tower, and the door was propped open. The gate to the fenced in area around the tower was open, although the lock did not appear to have been tampered with. An unmarked vehicle was present at the tower, and music was playing inside. The officer found it unusual based on his past experience patrolling the area for someone to be working at the tower at that time of night, and was concerned the tower was being burglarized or vandalized.

**{¶3}** Lt. Shreffler was unable to make contact with Verizon at the number on the tower, as the number had been disconnected. He called for backup assistance.

**{¶4}** Ptl. Leah Ziesler arrived at the scene, and the two officers entered the tower through the open door. Lt. Shreffler went to the left, and made contact with Appellant. Appellant told the officer he was in the tower performing maintenance, and was working at the unusual hour in order to shut down the tower during a time when there was less cell phone traffic. Ptl. Ziesler went to the right upon entering the building, and observed a glass marijuana bong in plain view, as well as a container containing a green substance. Appellant threw his shirt over the items in an attempt to conceal them. Appellant gave

consent to search his person and his vehicle. Marijuana was found in a container in his vehicle.

{¶5} Appellant was charged in the Ashland Municipal Court with possession of drug paraphernalia and possession of marijuana. He moved to suppress the evidence seized on the basis the officers entered the cell phone tower without a warrant in violation of the Fourth Amendment. Following a hearing before a magistrate, the magistrate concluded the police had exigent circumstances to enter the tower, and therefore the motion to suppress should be overruled. Appellant filed objections to the magistrate's decision. The trial court overruled his objections and entered judgment overruling the motion to suppress.

{¶6} Appellant changed his plea to no contest and was convicted as charged. He was sentenced to thirty days in jail, with twenty days suspended. It is from the March 2, 2020 judgment of the Ashland Municipal Court Appellant prosecutes his appeal, assigning as error:

THE TRIAL COURT ERRED BY NOT GRANTING THE MOTION TO SUPPRESS AND FINDING THE SEARCH WAS LEGAL.

{¶7} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d

1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726(1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶8} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap,* 73 Ohio St.3d 308, 314, 1995–Ohio–243, 652 N.E.2d 988; *State v. Fanning* , 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

{¶9} " 'The Fourth Amendment safeguards: "(t)he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched,

and the persons or things to be seized." ' *State v. Andrews,* 177 Ohio App.3d 593, 2008-Ohio-3993 [895 N.E.2d 585], at ¶ 19, quoting the Fourth Amendment to the United States Constitution.

**{¶10}** "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York* (1980), 445 U.S. 573, 586 (1980). "Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.* at 590. Ohio's parallel provision to the Fourth Amendment also protects commercial buildings in the same manner it protects private homes and offices. *State v. Penn,* 61 Ohio St.3d 720, 723, 576 N.E.2d 790, 792 (1991).[1]

**{¶11}** "The exigent circumstances doctrine requires that, in the absence of a search warrant, probable cause plus exigent circumstances are required to effectuate a warrantless entry of a home." *Kirk v. Louisiana,* 536 U.S. 635, 637, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002). Thus, even if the State establishes probable cause to search the premises existed, this alone is insufficient, absent exigent circumstances, to overcome the strong presumption a warrantless search or seizure is unconstitutional under the Fourth Amendment. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 468, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The exigent circumstances exception applies when there is a reasonable basis to believe entry into a structure is necessary to protect or preserve life, or to avoid serious injury. *State v. Sladeck,* 132 Ohio App. 3d 86, 89, 724 N.E.2d 488, 490 (1998). A police officer may also lawfully enter a structure to protect the property

---

[1] The question of whether Appellant had a reasonable expectation of privacy in the commercial structure is an issue of standing, which has been waived by the State's failure to raise the issue in the trial court. *State v. Wintermeyer,* 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278.

of the owner or occupant, when, for example, the police reasonably believe the premises have been or are being burglarized.  *Id.*

**{¶12}** In the instant case, the only fact relied upon by police to establish exigent circumstances was the presence of someone at the tower at an unusual hour.   We find all other facts available to the officer pointed to the lawful presence of a person at the scene:  there were no signs the lock was cut, both the gate and the door were left open, lights were on, music was playing, and a vehicle was parked in open view.

**{¶13}** Further, the testimony of the officers demonstrates they were aware they did not have probable cause but only a mere possibility a crime was occurring, and never considered getting a warrant before entering the tower.  Lt. Shreffler testified as follows on cross-examination:

Q.  Was there anything that looked like an emergency situation that there was a crime in progress that the Defendant might be fleeing from?

A.  In my mind, I thought there was a potential there for a crime being in progress, because that is not normally, the building is not normally open, and the gate is not normally open at that hour, and there was no company truck there.

Q.  Okay.  Could the two of you have secured the area while looking for a warrant at that time?

A.  I don't know what the cause for a warrant would have been, if there is a crime in progress, I think that I would have had the right to go in there and see.

Q. Okay. And what crime did you suspect was being committed?

A. Possible burglary or possible vandalism to the electronic equipment.

Q. Okay. It sounds like some of your responses to Prosecutor Hunter that you might have had a reasonable suspicion of something going on, and if that were the case, that would seem to indicate a need for a warrant, would it not?

A. I believe that we had the right to go in there and search to make sure that there wasn't a crime in progress.

Q. Okay. Are there any limits of your ability to go on private property to search for a crime?

A. I never had the issue come up, and I found dozens of unlocked or open doors during my career.

{¶14} Tr. 12-13.

{¶15} Similarly, Ptl. Zeisler testified on cross-examination:

Q. Did you suspect there was a crime in progress that the Defendant or perpetrator might be fleeing?

A. Yes, we know that there could have been a crime in progress, burglary.

Q. Would you have been able to secure the fenced in area if you were able to seek a search warrant?

A. I am sure that we could have, but we did not feel the need to.

**{¶16}** Tr. 19.

**{¶17}** In overruling the motion to suppress, the trial court relied on *State v. Sladeck, supra,* and on this Court's decision in *State v. Head,* 5th Dist. Stark No. 2017CA00051, 2017-Ohio-7473. We find the facts in those cases distinguishable from the facts in the instant case. In *Sladeck,* police received a phone call of a burglary in progress with someone possibly still inside the home. 132 Ohio App. 3d at 87. The caller reported seeing two juveniles kick in a basement window. *Id.* While waiting at the scene for a K9 unit to arrive, the officer observed a broken basement window, and a shelf inside the basement knocked down. *Id.*

**{¶18}** In *Head, supra,* police received a call from neighbors saying they observed multiple subjects with flashlights inside a home, which was vacant because the current owner was deceased. 2017-Ohio-7473 at ¶4. The defendant walked outside the house, and was detained until backup officers arrived. *Id.* at ¶5. The defendant was asked if others might be inside, and he responded they might be. Officers then did a sweep of the home, finding a methamphetamine laboratory either functioning or in the process of construction. *Id.*

**{¶19}** In both *Sladeck* and *Head,* a report of a crime in progress was received by police, and upon further investigation at the scene, police discovered specific facts indicating a crime potentially in progress which established exigent circumstances. In contrast, in the instant case, the only fact tending to indicate a crime in progress was the presence of a person at the cell phone tower at a time of night when it was normally

empty. Upon approaching the tower, all facts observed by the officers would mitigate against the conclusion a crime was in progress: lights were on, a car was parked in plain view, the gate was open with the lock showing no signs it had been tampered with, the door to the tower was propped open, and music was playing. We find the trial court erred in finding exigent circumstances justified the warrantless entry to the cell phone tower.

{¶20} In so holding, we do not imply police were required to walk away without further investigation. Police could have initiated a consensual encounter with Appellant in order to ensure he was lawfully on the premises by calling out to him or knocking on the door. Upon further investigation, there is a possibility their firsthand observations may have led to probable cause and exigent circumstances, justifying entry into the tower. *See State v. Gates,* 5th Dist. Stark No. 2019 CA 00153, 2020-Ohio-4027, ¶ 40. However, at the time police in this case entered the cell phone tower, we find they lacked probable cause and exigent circumstances to justify the warrantless entry.

{¶21} The assignment of error is sustained.

**{¶22}** The judgment of the Ashland Municipal Court is reversed. This case is remanded to that court for further proceedings according to law, consistent with this opinion.

By: Hoffman, P.J.

Wise, Earle, J. concurs and

Baldwin, J. dissents

**{¶23}** I must respectfully dissent from the majority's decision holding that the trial court erred in finding exigent circumstances justified the warrantless entry to the cell phone tower. I would hold that the facts in the record support a finding that the warrantless entry into the cell phone tower building was objectively reasonable.

It is a " 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" Nevertheless, because the ultimate touchstone of the Fourth Amendment is "reasonableness," the warrant requirement is subject to certain exceptions.* * * ' Warrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.' (Citations omitted.)

*Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650 (2006).

**{¶24}** The analysis of the facts to determine whether the warrantless search was objectively reasonable requires a consideration of the appellant's expectation of privacy. "In assessing what constitutes a reasonable search under the Fourth Amendment, courts consider the defendant's reasonable expectation of privacy in the premises searched." *AL Post 763 v. Ohio Liquor Control Comm.,* 82 Ohio St.3d 108, 112, 1998-Ohio-367, 694 N.E.2d 905. So, while waived for the issue of standing, a consideration of the appellant's expectation of privacy remains a part of the analysis.

{¶25} In the context of this case, appellant's expectation of privacy is lessened by the fact that he was not in his home, but was an employee in a commercial building. While Ohio's Constitution protects commercial buildings in the same manner as private homes, "An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home. (Citations omitted.) *New York v. Burger*, 482 U.S. 691, 700, 107 S.Ct. 2636, 2642, 96 L.Ed.2d 601 (1987). "[T]he expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home." *Donovan v. Dewey* (1981), 452 U.S. 594, 598–599, 101 S.Ct. 2534, 2538, 69 L.Ed.2d 262, 269 as quoted in *AL Post 763, supra* at 113. While these cases address the application of legislation authorizing administrative searches in regulated industries, the finding that the expectation of privacy in a commercial building differs from the expectation in a private home does not rely on that context. The legislation examined in those cases serves to further emphasize the difference between the different expectations and is not the source of the difference. *New York v. Burger, supra* at 700.

{¶26} Appellant was allegedly working in a cell tower building at 1:37 a.m. on Friday, June 28, 2019. Lt. James Shreffler of the Ashland Police department noticed the lights in the building were on and the door was propped open. In the officer's thirty year tenure with the Ashland Police Department he had never witnessed work being conducted at the cell tower building. He noticed a vehicle parked outside the building, but it had no markings. He attempted to call a number on a sign adjacent to the building, but the number was not working. Lt. Shreffler and another officer entered the building out of concern that the person inside was engaging in criminal behavior.

**{¶27}** I would find that the circumstances in this case support a conclusion that the warrantless search was objectively reasonable. *Brigham City, Utah, supra* at 403. Though not clearly described in the record, it appears this was a busy cell tower according to appellant's stated desire to work at an hour when the cell traffic was less. Cell phone service is an important utility connecting the community to emergency services and interruption of that service may have drastic results. Considering the importance of this service and the facts as observed by the officers, I would find that the exigencies of the situation made the needs of law enforcement sufficiently compelling that the warrantless search was objectively reasonable and that the trial court correctly denied the motion to suppress.

**{¶28}** For those reasons I must respectfully dissent.